Curtis HARGRAVES

v.

BRACKETT STRIPPING MACHINE
COMPANY, Inc. and Dexter Folder Co.,
Inc. (Miehle-Goss-Dexter, Inc.).

Civ. A. No. 5485.

United States District Court,
E. D. Tennessee, S. D.

Sept. 11, 1970.

Hargraves & Curtis, Chattanooga, Tenn., for plaintiff.

Goins, Gammon, Baker & Robinson, Campbell & Campbell, Chattanooga, Tenn., for defendants.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This case is before the Court upon the following motions: (1) motion for summary judgment filed by Brackett Stripping Machine Company, Inc., (2) motion for summary judgment filed by Miehle-Goss-Dexter, Inc., acting for Dexter Folder Co., Inc., and (3) motion of the plaintiff to amend so as to substitute Miehle-Goss-Dexter, Inc., as the party defendant in lieu of Dexter Folder Co., Inc.

Taking up first the plaintiff's motion to amend, the plaintiff seeks to amend his complaint by substituting the name of Miehle-Goss-Dexter, Inc., wherever the name Dexter Folder Co., Inc., appears in the pleadings. It appears un-

disputed from the interrogatories in this case that while Dexter Folder Co., Inc., and Miehle-Goss-Dexter, Inc., were separate and distinct corporations at one time, Miehle-Goss-Dexter, Inc., acquired all of the stock of Dexter Folder Co., Inc., and Dexter Folder Co., Inc., was merged into Miehle-Goss-Dexter, Inc., in 1956. It further appears undisputed that Miehle-Goss-Dexter, Inc., has been responding for and on behalf of Dexter Folder Co., Inc., throughout this litigation and has filed an answer on behalf of the said defendant. Under these circumstances there would appear to be no prejudice to Miehle-Goss-Dexter, Inc., if the plaintiff were allowed to amend his complaint so as to name Miehle-Goss-Dexter, Inc., as the party defendant herein in lieu of Dexter Folder Co., Inc. The motion to amend will accordingly be allowed.

Turning to the respective motions for summary judgment, the motion on behalf of the defendant, Miehle-Goss-Dexter, Inc., asserts the following: (1) that Dexter Folder Co., Inc., was not subject to the jurisdiction of this Court as it was not doing business in Tennessee at the time the lawsuit was filed; (2) that Dexter Folder Co., Inc., ceased to exist in 1956 and that any action based upon a sale made by it in 1928 is barred by the applicable Tennessee Statute of Limitations; and (3) that Dexter Folder Co., Inc., was not a party to any sale to the Times Printing Company of the machine involved in this lawsuit and this lawsuit is accordingly barred by lack of any privity between Dexter Folder Co., Inc., and either the Times Printing Company or the plaintiff.

The motion for summary judgment on behalf of the defendant, Brackett Stripping Machine Company, Inc., asserts the following: (1) that Brackett Stripping Machine Company, Inc., was not incorporated until July 16, 1964, and did not manufacture the machine on which the plaintiff was injured, nor did it have any connection of any kind with the design, manufacture or sale of the machine; (2) that a predecessor of Brackett Stripping Machine Company, Inc., a partnership going under the name of Brackett Stripping Machine Company, received assignment of the patent on the subject machine from the wife of the inventor upon November 5, 1927, and thereafter on January 15, 1934, sold and assigned the patent unto Dexter Folder Co., Inc.; and (3) that the machine sued upon was sold by the Dexter Folder Co., Inc., on August 29, 1928, and that this action is barred by the applicable statute of limitations.

It is apparent that the respective motions for summary judgment raise one issue in common and that is the statute of limitations issue. The Court will accordingly consider the other grounds in each motion separately and then jointly consider the statute of limitations issue. Before taking up the various grounds in the respective motions, however, it would be appropriate at this point to state those matters that appear undisputed in the present record.

Upon June 10, 1922, one John E. Mulroney obtained a patent upon a trimmer machine. Upon the death of the inventor this patent was assigned to his executrix, Margaret B. Mulroney, on July 23, 1927, and she in turn assigned the patent on November 25, 1927, to a partnership consisting of Edward M. Brackett and his son, Fred Brackett, doing business as the Brackett Stripping Machine Company. It appears that in 1928 a business arrangement existed between the Brackett Stripping Machine Company, the above referred to partnership, and Dexter Folder Co., Inc., whereby Brackett Stripping Machine Company manufactured under the above patent Trimmer Machine No. B4–107, being the machine that is the subject matter of this lawsuit, and Dexter Folder Co., Inc., as sole distributing agent for the machine, sold the machine to the Burkhart Company of Detroit, Michigan, on August 29, 1928.

Some 40 years later, on January 22, 1968, the Times Printing Company of Chattanooga, Tennessee, acting through its agent, Griffin Printing Machine

Company of Nashville, Tennessee, purchased the Trimmer Machine No. B4–107 from the Burkhart Company. On June 18, 1968, the plaintiff, in the course of his employment with the Times Printing Company, was working about the said trimmer machine when he received injuries that form the basis of this lawsuit.

Following the manufacture of Trimmer Machine No. B4–107 in 1928, the history of the Brackett Stripping Machine Company is as follows. As noted above, the Brackett Stripping Machine Company in 1928 was a partnership consisting of Edward M. Brackett and his son, Fred Brackett. In 1934 Edward M. Brackett transferred his interest in the said partnership to his son, Fred Brackett, for the sum of $1.00. Thereafter Fred Brackett, continuing to operate under the name of Brackett Stripping Machine Company, operated the business as a sole proprietorship from 1934 until 1958. On November 8, 1958, Fred Brackett entered into a partnership agreement with one Boyd C. Blair. This partnership continued to operate the business under the name of the Brackett Stripping Machine Company from 1958 until January 1, 1964, when Fred Brackett sold his interest in the partnership to Boyd C. Blair. From January 1, 1964, until July 16, 1964, Boyd C. Blair operated the business as a sole proprietorship. On July 16, 1964, the defendant corporation, the Brackett Stripping Machine Company, Inc., was first organized with Boyd C. Blair, Jeanie L. Blair, and Harold J. Swenson as incorporators. Boyd C. Blair transferred his interest in the Brackett Stripping Machine Company, the sole proprietorship, to the defendant corporation in return for stock in the corporation and the defendant corporation has since owned and operated the business.

As regards the Dexter Folder Co., Inc., it appears that this corporation was founded in Des Moines, Iowa, in 1890 and moved to Pearl River, New York, in 1894. In 1927 the Miehle Printing Press and Manufacturing Company acquired a 50% interest in the Dexter Folder Co., Inc., and in February 1956 acquired the remaining 50% interest. In September 1956 Dexter Folder Co., Inc., was merged into Miehle Printing Press and Manufacturing Company. Thereafter the name of the corporation was changed to Miehle-Goss-Dexter, Inc., and the former Dexter Folder Co., Inc., is now operated as a division of Miehle-Goss-Dexter, Inc.

Returning to the motion for summary judgment filed on behalf of the defendant, Brackett Stripping Machine Company, Inc., it is contended that the defendant corporation, having been organized only in 1964, could not be held liable for a machine manufactured and sold in 1928 by a predecessor partnership doing business under the name of Brackett Stripping Machine Company. While it does appear undisputed that the defendant corporation is a separate and distinct business entity from the partnership which in 1928 manufactured the trimming machine herein sued upon, the present record does not reflect sufficient facts to permit the Court to determine whether in the successive transfers of the business between the 1928 partnership and the 1964 corporation there was an unbroken chain of assumption of liabilities. The present record is insufficient to establish whether in each successive transfer the liabilities of the previous business entity were passed on to the successor business either by agreement of the parties or by operation of law, such as pursuant to the Bulk Sales Law or the Law of Fraudulent Conveyances. The plaintiff will of course have the burden of proving an unbroken line of assumption of liabilities, either by agreement of the parties or by operation of law, between the business entity manufacturing the subject machine in 1928 and the defendant corporation before the defendant corporation could be held liable in this lawsuit. On the basis of the present record the Court cannot say that no genuine issue of fact exists in this regard.

Turning to the motion for summary judgment filed on behalf of Dexter Folder Co., Inc., it would appear that insofar as the defendant contends that the Court lacks personal jurisdiction over Dexter Folder Co., Inc., the motion has been rendered moot by the plaintiff's amendment substituting Miehle-Goss-Dexter, Inc., as the party defendant. As previously noted, Dexter Folder Co., Inc., was merged into Miehle-Goss-Dexter, Inc., in 1956. Treating the motion for summary judgment as being made on behalf of Miehle-Goss-Dexter, Inc., it does not appear that the jurisdictional issue can be resolved on the present record. Rather than reflecting an absence of doing business in Tennessee, the evidence reflects that Miehle-Goss-Dexter, Inc., has done substantial business in Tennessee in recent years. Accordingly the motion for summary judgment upon the ground of lack of personal jurisdiction will be denied.

■ The Court is likewise of the opinion that the motion for summary judgment for lack of privity between Dexter Folder Co., Inc., and its successor, Miehle-Goss-Dexter, Inc., on the one hand and the Times Printing Company or the plaintiff on the other hand is without merit. Privity of contract is not an essential element in an action based either upon negligence or upon strict liability. Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430; Restatement of Torts, § 402A(2) (b).

There remains to consider the contention made in each motion for summary judgment that the plaintiff's cause of action is barred by the applicable Tennessee Statute of Limitations. As noted above, it is undisputed in this case that the machine in regard to which negligence and strict liability are alleged was designed, manufactured and sold on or before August 29, 1928. It is also undisputed that the plaintiff's injury did not occur until June 18, 1968. The present lawsuit was filed upon June 14, 1969. More than 40 years elapsed between the design, manufacture and sale of the machine and the filing of this lawsuit. Upon this admitted state of the record, each defendant contends that the plaintiff's cause of action would be barred by the Tennessee One Year Statute of Limitations applicable to personal injury cases (T.C.A. § 28–304) and pursuant to the construction placed upon that statute by the Tennessee Supreme Court in the case of Jackson v. General Motors Corp., Tenn., 441 S.W.2d 482, cert. denied 396 U.S. 942, 90 S.Ct. 376, 24 L.Ed.2d 243.

In response the plaintiff seeks to distinguish the present case from the holding in the Jackson case and contends in this regard that the holding in the Jackson case does not apply either where strict liability is the basis of the action or where the negligence alleged is continuing negligence or where the damages sought are consequential damages. Apart from distinguishing the present case from the holding in the Jackson case, the plaintiff's principal attack is directed toward having the Tennessee Statute of Limitations, as construed in the Jackson case, declared in violation of the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. It is the plaintiff's contention that when the Tennessee One Year Statute of Limitation is construed as running from the date of the sale or the wrongful act of the defendant, as required in the Jackson case, rather than from the date of the plaintiff's injury, the statute operates to deprive the plaintiff of any remedy against the defendants, thus depriving him of his rights in violation of due process.

■■ This being an action in which jurisdiction is dependent upon diversity of citizenship, this Court must look to the law of Tennessee in determining all issues in regard to the statute of limitations defense. Erie Railway Co. v. Tompkins, (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. of New York v. York, (1945) 326 U.S. 99, 89 L.Ed. 2079, 65 S.Ct. 1464. This Court will accordingly be bound by the

decisions of the Supreme Court of Tennessee in construing the statute of limitations of that State, whatever criticism may be directed toward the soundness of those decisions short of a constitutional attack.

In Jackson v. General Motors Corp., *supra*, the Tennessee Supreme Court sustained the trial court's dismissal of a personal injury action as barred by the Tennessee One Year Statute of Limitations (T.C.A. § 28–304) where it appeared on the face of the declaration that the lawsuit had been filed more than 2½ years after the sale of an automobile alleged to have been sold with defective brakes, even though the action was brought within less than one year from the date the plaintiff alleged that she was injured by reason of the defective brakes. Although liability purported to have been based upon negligence, breach of warranty and misrepresentation in the *Jackson* case, and not upon strict liability, the substance of the holding is that all personal injury actions, regardless of the theory of liability, are governed by the Tennessee One Year Statute of Limitations (T.C.A. § 28–304) and that the limitation in that statute begins to run from the date of the alleged wrongful act or from the date of the sale of the alleged defective equipment, and not from the date of any damage or injury caused thereby.

The plaintiff's argument in part appears to be directed to the unsoundness of the holding in the *Jackson* case. It does appear that the opinion in the *Jackson* case, as well as the precedents relied upon therein, may be subject to valid criticism. [See note: 36 T.L.R. 416 (1969); see also Prosser Law of Torts, 3rd Ed., § 30.] Some measure of the validity of the criticism may be gained from noting that the case was decided without a single reference to the statute or to the language of the statute being construed, although the sole issue involved was one of statutory construction. This Court is nevertheless bound by that decision and by the construction placed upon T.C.A. § 28–304 in that de-

cision. The fact that the Tennessee Legislature following the *Jackson* decision promptly amended T.C.A. § 28–304 so as to provide that, "For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury and not the date of the negligence of the sale of the product," is not relevant under the facts of this case, as the Legislature in the same amendment went on to provide: "The preceding sentence shall not apply to causes of action accruing prior to May 20, 1969."

The Court is unimpressed with the plaintiff's arguments seeking to construe the *Jackson* decision as having no application to personal injury actions based upon strict liability, or contending that the defendant's negligence was continuing negligence, or that the plaintiff's injuries were consequential rather than direct. These arguments appear to be without merit upon a reading of the *Jackson* decision and upon the undisputed facts presented in the present case.

There remains to consider the contention that T.C.A. § 28–304, when construed as commencing to run from the date of the wrongful act or omission or from the date of the sale of a defective product, is unconstitutional as a denial of due process. The plaintiff's argument in this regard is that when the Tennessee Statute of Limitations is so construed, it operates to deprive the plaintiff of his remedy against the defendants prior to the date of his injury and thus prior to any cause of action having arisen, thereby depriving the plaintiff of his right to compensation for injuries wrongfully inflicted in violation of the Due Process Clause. In support of his attack upon the statute, the plaintiff relies principally upon a line of authority wherein it was held that an existing right of action could not be taken away by legislation that shortened the period of limitations to a time which has already run (see Chapman v. Douglas County, 107 U.S. 348, 27 L.Ed. 378, 2 S.Ct. 62; Sohn v. Waterson,

84 U.S. (17 Wall.) 596, 21 L.Ed. 737; Coleman v. Superior Court, 135 Cal.App. 74, 26 P.2d 673; Slover v. Union Bank, 115 Tenn. 347, 89 S.W. 399), and upon a line of authority holding limitations statutes invalid where the limitation period is unreasonably short (see Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793; Lamb v. Powder River Livestock Co., 8 Cir., 132 F. 434; Crawford v. Hunt, 41 Ariz. 229, 17 P.2d 802). Upon the surface these cases might appear to be persuasive authority. A more careful analysis, however, will reveal that they bear only indirectly upon the issue here presented. The issue here presented is whether legislation may, without violating due process, designate the date of the wrongful act or the date of the sale of a defective product, rather than the date of the injury, as the inception date for the running of the statute of limitations in a tort action. The cases cited above involve the reasonableness of the limitations period itself. The reasonableness of the one year limitations period provided in the statute under consideration would not appear subject to question. See 34 Am.Jur., "Limitations of Actions," § 25.

A number of cases have dealt with the issue of whether a particular statute of limitations was to be construed as commencing to run from the date of the injury or from the date of the wrongful act, with many arriving at the conclusion that the statute runs from the date of the injury. Foley v. Pittsburg-Des Moines Co., 363 Pa. 1, 68 A.2d 517 (1949); Abbott v. United States, 207 F.Supp. 468 (S.D.N.Y.1962); Brown v. Anderson Nichols and Co., 203 F.Supp. 489 (D.Mass.1962); Williams v. Moran, et al. 205 F.Supp. 208 (S.D.N.Y.1962); Arrow Transport Co. v. Fruehauf, 289 F.Supp. 170 (D.Or.1968); Rosenau v. City of New Brunswick, 51 N.J. 130, 238 A.2d 169 (1968); Howard v. United Fuel Gas Co., 248 F.Supp. 527 (S.D.W. Va.1965); White v. Schnoebelen, 91 N. H. 273, 18 A.2d 185 (1941); Kitchener v. Williams, 171 Kan. 540, 236 P.2d 64 (1951); Gile v. Sears, Roebuck & Co.,

281 App.Div. 95, 120 N.Y.S.2d 258 (1952); Di Gironimo v. American Seed Co., 96 F.Supp. 795 (E.D.Pa.1951). A few cases have arrived at the conclusion that the statute under consideration ran from the date of the wrongful act or from the date of the sale of a defective product, as did the Court in the *Jackson* case. Dincher v. Marlin Firearms Co., 198 F.2d 821 (C.A. 2, 1952); Thurston Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 128 S.E.2d 413 (1962). However, there have been no cases that have come to the attention of the Court which dealt with the issue as to whether the latter construction rendered the statute subject to constitutional attack. This Court must accordingly look to relevant general principles of constitutional law in resolving the issue presented.

Statutes of limitation have been part of the law of every civilized nation from time immemorial. Since each sovereignty may organize its judicial tribunals according to its own notions of policy, it has been recognized since the early days of this republic that statutes of limitation are within the sovereign power of each state to enact. Hawkins v. Barney's Lessee, 5 Pet. (30 U.S.) 457, 8 L.Ed. 190 (1831). Such statutes, having the effect of denying any judicial remedy for the enforcement of an otherwise valid claim, are justified on grounds of policy and as statutes of repose "designed to protect the citizens from stale and vexatious claims and to make an end to the possibility of litigation after the lapse of a reasonable time." Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 82 L.Ed. 1224, 58 S.Ct. 785 (1937). The legislative body, in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him before the lapse of time has likely rendered unavailable or difficult the matter of obtaining or presenting proof. Any balance of these conflicting interests which is not arbi-

trary or capricious is within the legislative authority and not subject to constitutional attack for lack of due process. As stated by Justice Baldwin in dealing with the validity of a state recording law in the case of Jackson ex dem. Hart v. Lamphire, 3 Pet. (280 U.S.) 280, 7 L.Ed. 679 (1830):

"Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and *the acts from which the time limited shall begin to run*, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country and the emergency which leads to their enactment. Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the court; but the present is not one." (Emphasis supplied)

Thus the relevant test of due process here is basically the test of reasonableness. If in balancing the conflicting interests of the parties reason can be established, or, stated in reverse, if a lack of arbitrariness can be established in the selection of the date of the wrongful act or the date of the sale of a defective product as the inception date for the running of the statute of limitations in a personal injury action, no constitutional attack on such legislation would lie. Since in every personal injury lawsuit the proof must include evidence of a breach of duty, a wrongful act or a defect in a product, the effect of the lapse of time in the availability of proof of such matters would not be an unreasonable concern for a legislative body to have in mind in the enactment of a statute of limitations. The reasonableness of such a concern becomes the more weighty when it is recognized that in by far the great majority of personal injury cases the wrongful act and the injury follow in close sequence, with no significant lapse of time between the two. Only in a relatively few instances will there be a significant time interval between the two, with product liability cases furnishing the most frequent illustration of such an interval. Even in product liability cases the lapse of time between the wrongful act or the sale of a defective product and the occurrence of the injury is often not a significant one.

When the foregoing matters are weighed against the right of an injured party to seek judicial relief in the exceptional instance where more than a year has elapsed between the wrongful act or the sale of a defective product and the injury, this Court is of the opinion that legislation adopting the date of the wrongful act or the date of the sale of the defective product as the inception date for the running of a statute of limitations cannot be said to be so arbitrary or capricious as to fall under the ban of the Due Process Clause. A statute of limitations must be judged in the light of the broad class of cases to which it applies and if it is reasonable with respect to the class, it will not be judged unreasonable merely because it is deemed to operate harshly in a particular or exceptional instance. Lamb v. Powder River Livestock Co., (C.A. 8) 132 F. 434; Allen v. Mottley Construction Co., 160 Va. 875, 170 S.E. 412. In reaching this conclusion it should be emphasized that the role of the Court is not to pass upon the wisdom or lack of wisdom of the legislation involved. The courts do not sit to review the wisdom of legislation or regulation by public bodies, for these matters address themselves solely to the legislative or regulating body. United States v. American Union Transport, 327 U.S. 437, 66 S.Ct. 644, 90 L.Ed. 772 (1945).

There being no dispute in the record but that more than one year elapsed between the filing of the present lawsuit and the date of the alleged wrongful act or the date of the sale of the product alleged to have been defective, and the ap-

plicable Tennessee Statute of Limitations not being subject to constitutional attack for lack of due process, this lawsuit must accordingly be held to be barred. The motion for summary judgment of each defendant will be sustained and the lawsuit dismissed.

An order will enter accordingly.