Jennifer Cheryl FOSTER, Individually, and by and through her natural parents and Co-Conservators, James Kenneth Foster and wife, June Foster, Plaintiffs-Appellants,

v.

Charlene ALLBRIGHT, Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section.

Jan. 22, 1982.

Permission to Appeal Denied by Supreme Court April 12, 1982.

Marshall E. Duggin, Woodbury, for plaintiffs-appellants.

John Rucker and John R. Rucker, Jr., Murfreesboro, for defendant-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With concurrence of the participating judges, the original opinion has been amended for publication)

This is an action for personal injuries sustained more than one year prior to the filing of suit. Plaintiff claims that her mental disability tolled the running of the one year statute. The Trial Judge held that the evidence did not support plaintiff's claimed disability and rendered summary judgment for the defendant. Plaintiff has appealed.

The memorandum of the Trial Judge states:

The material issue for the Court to decide is whether or not Miss Foster as a plaintiff had a mental disability that would toll the statute of limitations.

By Memorandum this Court has previously held and so holds now that at the time of the accident Miss Foster was not incompetent or in need of a conservator. However, the Court also was of the opinion and so held that the doctors opinions indicated the conservatorship was made necessary by the accident.

We are now presented with opinions that are contrary to the holding above. Miss Foster indicates that she was "mentally able". Her mother, June Foster, one of the co-conservators in response to a leading question concerning her daughter's mental condition stated "I can't say that her mind was off". Miss Foster's physician, Dr. Bryant, stated that for some period of time after the accident that his patient, Miss Foster, "was of sound mind in her judgment". The clinical psychologist, Dr. Buchanan, who examined Miss Foster in May, 1978, indicates that she was above average in intelligence and above average in memory and problem solving and was at that time perfectly capable of managing her personal affairs, business affairs and her estate but that the problem here was occasioned by tensions and stresses between Miss Foster and her parents.

Dr. John T. Cunningham, Ophthamologist, who treated Miss Foster on November 30, 1977, some ten days after the accident with respect to a double vision problem indicated that in his judgment, she was of sound mind.

The foregoing resume of the proof has been set forth as an example of the conclusions reached by the parties and their physicians. However, a careful reading of all the depositions indicates that Miss Foster was competent throughout the year following her accident and cannot rely upon a conservatorship as evidence of a disability which would toll the statute of limitations, which conservatorship doubtless arose out of a conflict between an adolescent and her parents.

The summary judgment procedure is not a substitute for trial of disputed factual issues. *Taylor v. Nashville Banner Publishing Co.*, Tenn.App., 1978, 573 S.W.2d 476.

In ruling on motions for summary judgment, the Court must consider the matter in the same manner as a motion for directed verdict, viewing all of the evidence in the light most favorable to the opponent of the motion, drawing all legitimate conclusions in favor of the opponent. If a dispute as to a material fact thereby appears, the motion must be denied. *Berry v. Whitworth*, Tenn.App., 1978, 576 S.W.2d 351.

In other words, if there is any credible evidence to support plaintiff's claim of mental disability at the time the cause of action arose, the motion should be denied in favor of a full evidentiary hearing on the factual issue.

It is undisputed that the injury occurred on November 20, 1977, and that, on May 26, 1978, a "Final Decree" was entered in Chancery Court at Woodbury, Tennessee, containing the following:

This case came on to be heard at Woodbury, Tennessee, on May 26, 1978, before the Honorable Whitney Stegall, Chancellor, upon the Complaint and Medical Doctors' Report as Exhibit thereto, Summons and Notice of Hearing served upon the Respondent, and the Answer filed by the Guardian Ad Litem, in fact, upon the whole record, and upon the testimony of witnesses appearing in open Court, from all of which the Court finds that the Respondent did receive a terrific blow to her head when involved in a motor vehicle crash on November 20, 1977, and that her emotional stability, personality and reasoning ability have become affected which has caused a change in her normal pattern of lifestyle, and under these circumstances, the Court is of the opinion, and so finds that this is an appropriate and proper instance in which to have a conservatorship for the management of the Respondent's property, business affairs, estate and of her person.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that Petitioners, Kenneth Foster and wife, June Foster, be, and they are hereby appointed as Co-Conservators of the property, business affairs, estate and person of the Respondent, . . .

There is no evidence that the conservatorship, mentioned above, has been terminated.

Coincidentally, the Trial Judge in the present case also acted as Chancellor in granting the conservatorship decree on May 26, 1978. This explains some of the wording of his memorandum, quoted above, which indicates that, in acting in the present Circuit Court case, the Trial Judge reversed his previous decision in the Chancery Court case in respect to the competency of the plaintiff.

Disregarding the coincidence of the same judge sitting on the same issue in separate cases in separate courts, it is clear that, on May 26, 1978, six months after the injury, plaintiff was adjudged by the Chancery Court to be affected by a mental disability or impairment, and that on June 4, 1981, the Circuit Court entered a judgment that plaintiff was not mentally impaired at any time during the year following the injury, that is, that the Chancery Decree entered on May 26, 1978, was in error as to the fact of mental impairment.

■ A valid decree of incompetency cannot be collaterally attacked. *McCartney v. Gamble*, 184 Tenn. 243, 198 S.W.2d 552 (1947).

■ The effect of this judgment under review was to sustain a collateral attack upon the decree of incompetence based upon a new evidentiary hearing. This action, which is not ordinarily permissible, is to be distinguished from the determination of mental state *after* the previous adjudication, which is permissible.

That is to say, the Trial Judge would have been free to decide that the plaintiff fully regained mental competence after the previous adjudication; but he was without authority to negate the Chancery decree which established mental condition as of May 26, 1978, and which had become final.

There is testimony in the record which would support a finding of incompetency originating in the injury. Such evidence precludes a summary judgment on this issue.

T.C.A. § 28-1-106 reads as follows:

*Persons under disability on accrual of right.*—If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, *or of unsound mind,* such person, or his representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceed three (3) years, and in that case within three (3) years from the removal of such disability. (Emphasis supplied)

Although the rule is not universal, the dominant line of authority is that an adjudication of incompetency is some evidence that incompetency existed at a time prior to the adjudication. See authorities cited in notes 6 and 7 under text in 44 C.J.S., Insane Persons, § 32, p. 90.

In the present case, involving a summary judgment, the rule is even more compelling because the opinion of the Trial Judge, quoted above, states that in his former adjudication in the separate Chancery case: "the court was of the opinion and so held that the doctor's opinions indicated the conservatorship was made necessary by the accident."

The evidence just cited is not conclusive that the mental disability came into being simultaneously with plaintiff's injuries and therefore was in existence at the time the cause of action accrued, for it is conceivable that mental impairment was a delayed after-effect of the collision rather than a condition which came into being at the time of the collision. However, under the medical evidence cited by the Trial Judge, above, the adjudication was *some* evidence of incapacity of plaintiff at the time the cause of action accrued.

Defendant-appellee insists that, in order to invoke the benefits of T.C.A. § 28–1–106, it is not sufficient to show that the incapacity had its inception at the time of the injury, but that plaintiff must show that the incapacity existed prior to the injury. Defendant cites T.C.A. § 28–1–108 as indicating a legislative intent to this effect.

This Court does not agree. The cited statute does no more than reiterate the condition set out in T.C.A. § 28–1–106, that disability must exist at the time the cause of action accrued.

Defendant cites *Roelefson v. Pella,* 121 Iowa 153, 96 N.W. 738 (1903), wherein the plaintiff's incapacity did not appear until the day following the injury. Other than the evidence cited above, there is no evidence that the incapacity arose on the day after the injury. Moreover, *Roelefson* is regarded as the minority authority on the subject.

The majority authority is *Nebola v. Minnesota Iron Co.,* 102 Minn. 89, 112 N.W. 880 (1907), wherein the plaintiff was rendered insane simultaneously with the injury and the Court held that the incapacity existed "at the time of the accrual of the cause of action."

The inference most favorable to plaintiff from the evidence in the record is that her incapacity began at the time of the injury, and was therefore in existence at the time the cause of action accrued. At this stage, plaintiff is entitled to have this inference indulged. This Court agrees with the holding of the Minnesota case of *Nebola, supra,* that disability arising at the time of injury will toll the statute. In the present case, the Trial Court did not undertake to settle the question of whether the mental disability arose simultaneously with or subsequently to the injury. The question therefore cannot be decided by this Court at this state of this proceedings, but must await a full evidentiary hearing and decision at the trial level.

Since there was conflicting evidence on the issue of the competency of plaintiff on the date the cause of action accrued, there was a genuine issue as to a material fact, and summary judgment was not in order. *Evco Corporation v. Ross,* Tenn. 1975, 528 S.W.2d 20.

The summary judgment for the defendant is reversed and vacated. The cause is remanded for trial upon the merits. Costs

of this appeal are taxed against the defendant-appellee.

Reversed and remanded.

LEWIS and CANTRELL, JJ., concur.