Pamela SMITH, Conservator for
her ward, Everett Alan
Smith, Plaintiff,

v.

GRUMMAN–OLSEN CORP., n/d/b as Grumman–Allied Corp., a wholly owned subsidiary of Grumman Corp.; General Motors Corp.; Perkins Automotive Repair; Sam Hill Automotive Repair; and Highland Plaza Exxon, Defendants.

No. 1:95–CV–102.

United States District Court,
E.D. Tennessee,
Chattanooga.

Dec. 4, 1995.

Tricia I. Dennis, John Alley, Alley & Dennis, Chattanooga, TN, Olen G. Haynes, Davis, Arnold, Haynes and Sanders, Knoxville, TN, for Pamela Smith, Conservator, for her ward Everett A. Smith

Joe D. Spicer, Marc O. Dedman, Spicer, Flynn & Rudstrom, Nashville, TN, for Grumman–Olsen Corp. dba Grumman Allied Industries Inc., Grumman Corporation.

Paul R. Leitner, Michael K. Alston, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napo, Chattanooga, TN, for General Motors Corporation.

John F. Kimball, Bell and Associates, Cleveland, TN, for Sam Hill Automotive Repair.

L. Hale Hamilton, Robert G. Norred, Jr., Spears, Moore, Rebman & Williams, Chattanooga, TN, for Highland Plaza Exxon.

### *MEMORANDUM*

COLLIER, District Judge.

This case was removed from the Hamilton County, Tennessee, Circuit Court by defendants Grumman–Olsen Corporation, n/d/b as Grumman–Allied Corporation, General Motors Corporation, Sam Hill Automotive Repair, and Highland Plaza Exxon (Court File

No. 1). Plaintiff Pamela Smith brought this civil case as conservator on behalf of her ward and spouse, Everett A. Smith. Smith alleges causes of action for products liability and negligence.

Before the Court are motions for judgment on the pleadings or, alternatively, summary judgment motions, of defendants Highland Plaza Exxon (Court File No. 11), Sam Hill Automotive (Court file No. 15), General Motors (Court File No. 24), and Grumman–Olsen (Court File No. 33). For the reasons that follow, the Court will DENY the motions of Grumman–Olsen, General Motors, and Sam Hill Automotive, and will GRANT the motion of Highland Plaza Exxon.

## I. *PROCEDURAL HISTORY*

On February 23, 1995, plaintiff filed a complaint in the Hamilton County Circuit Court against defendants (Court File No. 1, Attachment). On March 31, 1995, defendants removed the case to this Court because of diversity of citizenship. On April 24, 1995, plaintiff filed an amended complaint (Court File No. 7). All defendants filed motions for judgment on the pleadings pursuant to Rule 12(b)(6), *Fed.R.Civ.P.*, or, alternatively, for summary judgment pursuant to Rule 56, *F.R.Civ.P.* On May 17, 1995, plaintiff filed with this Court a Petition for Certification of Questions of State Law to the Tennessee Supreme Court pursuant to Rule 23 of the Rules of the Tennessee Supreme Court (Court File No. 18). In connection with this petition, plaintiff also requested a stay (Court File No. 20). Both the petition and the request for a stay were denied (Court File No. 53). Subsequently, plaintiff filed responses to the defendant's motions.

Also pending is Highland Plaza Exxon's motion for judgment on the pleadings or for summary judgment (Court File No. 11). Highland Plaza Exxon in this motion, in addition to its legal argument regarding the statute of limitations, also alleged a factual argument focusing on causation. In sum, Highland Plaza Exxon denies engaging in any activity with respect to the truck in question which could have caused the injuries suffered by Smith.

Plaintiff did not respond to Highland Plaza Exxon's assertions that there was no causation with respect to its actions and the injuries suffered by Smith. Highland Plaza Exxon pointed this out in its response to plaintiff's petition for certification (Court File No. 22).

## II. *FACTS*

Because the Court considers the facts critical to the resolution of the issues raised in this case, the court will discuss the facts in some detail.

These facts are derived from the parties' pleadings, deposition testimony, and other submissions. Everett A. Smith worked for Safety Kleen from 1986 until March 3, 1993 as a service representative. His job entailed transporting hazardous waste, with some selling and service responsibilities (Court File No. 11, Ex. C, Smith Deposition, pp. 10–11). Smith's job required him to drive a truck carrying containers of industrial solvent and service equipment and materials (Court File 11, Ex. C, p. 13). Smith had a truck assigned to him and apparently always, or primarily, drove the same truck (Court File No. 11, Ex. C, Smith's deposition, p. 42). The truck was owned and maintained by Safety Kleen. This truck was a 1988 Chevrolet Stripped Chassis, Model CP31442–Forward Control Chassis. Defendant Grumman–Olson (now Grumman–Allied) purchased the truck from defendant General Motors sometime in 1988.

On approximately February 24, 1993, Smith was exposed to carbon monoxide emanating from the truck while engaged in his employment with and by Safety Kleen. (Safety Kleen is not a defendant in this action.) Smith smelled a new odor emanating from the truck (Court file No. 11, Ex. C, Smith Deposition, p. 41). He recognized that he had been exposed to something and discussed this with another worker at Safety Kleen, John Walker, on February 26, 1993 (Court File No. 11, Smith deposition, Ex. C, pp. 34, 41–42). Walker told him that the truck had an exhaust leak (Court File No. 11, Smith deposition, Ex. C, p. 34). Plaintiff alleges that this exposure resulted in permanent injuries to Smith (Court File No. 1).

Smith told his wife, plaintiff Pamela Smith, about his possible exposure to carbon monoxide (Court File No. 26, attachment to Pamela Smith deposition, pp. 27–28). Smith told Pamela Smith that John Walker had looked at Smith's truck and told Smith that the fumes were coming inside the cab of the truck. Both Smith and plaintiff visited a doctor, Doctor Groff, on February 26, 1993 to seek treatment for the possible exposure. They were told that Smith's symptoms were consistent with carbon monoxide poisoning (Court File No. 26, attachment to Pamela Smith deposition, pp. 27–28).

Shortly after this incident, Smith submitted a letter of resignation to Safety Kleen (Court File No. 11, Ex. C, Smith deposition, pp. 37, 38, Letter of resignation, Ex. 1 to deposition). Immediately after leaving Safety Kleen, he took a job with Zep Manufacturing but was terminated from this company ten and a half months after starting (Court File No. 11, Ex. C, Smith deposition, p. 47).

Between March 1 and May 1, 1993, Smith retained the services of the law firm of Jenkins and Bradshaw in connection with his injuries and entered into a contract with this law firm (Court File No. 18, Petition for Certification, Ex B., Contract for Attorney Services). Jenkins and Bradshaw was retained to handle Smith's worker's compensation claim, to investigate a probable products liability claim, and to prosecute such a products liability claim against any parties that might have been responsible for the leaking carbon monoxide (Court File No. 18, Ex. B, Contract for Attorney Services). On October 22, 1993, B. Stewart Jenkins of this law firm filed a worker's compensation action in state court against Safety Kleen for the injury of February 24 (Court File No. 26, attachment 2, Workman Compensation Complaint).

Jenkins prosecuted the workman's compensation claim until its resolution. There is no indication in the record Jenkins questioned Smith's competence nor took any action to have plaintiff appointed as Smith's conservator. Nor is there any evidence in the record Smith was incapable of fully conversing with Jenkins and properly handling his legal affairs with counsel.

Tennessee has a one-year statute of limitations for products liability and tort cases.

Tenn.Code Ann. § 29–28–103 and Tenn.Code Ann. § 28–3–104. The cause of action accrued on February 24, 1993. Accordingly, this statute of limitations would have run on or about February 24, 1994. On February 29, 1994, Smith gave deposition testimony in which he said he was aware he had been exposed to carbon monoxide. Smith was told by his attorney at the time he had a probable products liability action (Court File No. 26, Ex. 2, Response to Motion for Attorney's Lien). Plaintiff in this action, Pamela Smith, Smith's spouse, alleges she was a party to this conversation (Court File No. 46, Ex. F to General Motors' Reply Brief in Support of Motion for Summary Judgment, Complaint at ¶ 4). Pamela Smith learned at approximately the same time as Everett Smith that he had been exposed to carbon monoxide (Court file No. 26, Attachment 5, Deposition of Pamela Hill pp. 27–30). Sometime after this deposition, but before November 10, 1994, Smith relieved Jenkins of responsibility for representing him and retained present counsel (Court File No. 26, Attachment 1 to Response of Sam Hill, Motion Substituting Counsel for Plaintiff). On November 18, 1994, present counsel, in a court filing in state court, stated previous counsel (i.e., Jenkins and Bradshaw) apparently allowed the statute of limitations on Mr. Smith's products liability causes of action to expire (Court file No. 11, Ex. D, Response to Motion for Attorney's Lien). On February 16, 1995, Smith was declared incompetent due to the exposure to the carbon monoxide by a Hamilton County, Tennessee chancery judge (Court file No. 18, Ex. A). This incompetence was ruled to have existed from the date of the exposure to the carbon monoxide, i.e., to February 24, 1993. Smith's wife, the plaintiff, was made his conservator.

On August 14, 1995, plaintiff, through present counsel, filed a complaint in the Circuit Court of Hamilton County, Tennessee, Docket No. 95–CV–1525, alleging legal malpractice against attorneys Stewart B. Jenkins and Robert Bradshaw (Court File No. 45, Ex 5, Hamilton County Circuit Court Complaint). In this complaint, plaintiff alleges that the "(d)efendant did not institute ... action in any court of competent jurisdiction, and negligently permitted (p)laintiff's ward's

cause of action to become barred by the statute of limitations of the State of Tennessee...."[1] (Court File No. 45, Ex. 5, p. 3). In this complaint, plaintiff admits that between March 1, 1993 and May 1, 1993, she and Everett Smith were told by B. Stewart Jenkins that they "probably" had a cause of action for products liability against the source of the carbon monoxide (Court File No. 45, Ex. 5, p. 2).

### A. *Parties' Arguments*

On its face, the complaint shows the injury which gave rise to this cause of action took place more than one year before the filing of this action. In view of the one year statute of limitations for actions of this sort, the defendants have all filed motions seeking dismissal of the case or summary judgment. They contend the plaintiff's cause of action expired one year after the injury, and the chancellor's action declaring Smith incompetent could not revive the expired cause of action.[2]

Plaintiff, in her complaint, alleged Smith was incompetent from the time the cause of action accrued until the time of filing and, because of that disability, the statute of limitations had been tolled pursuant to Tenn. Code Ann. § 28–1–106. In support of her contention, plaintiff points to the chancellor's decree of incompetence. She argues the chancellor's decision must be given effect and when given effect, that decision requires a finding the statute of limitations had not run.

These opposing arguments present the issue facing the court. Stated succinctly, the issue is whether, unless the statute of limitations was tolled, the plaintiff's suit is barred considering this action was brought well after the relevant statute of limitations had run.

### III. *STANDARD FOR MOTION TO DISMISS AND SUMMARY JUDGMENT*

#### A. *A Motion to Dismiss under Fed. R.Civ.P. 12(b)(6)*

A motion to dismiss under *Fed. R.Civ.P.* 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller,* 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

The parties having included matters outside of the pleadings for the Court's consideration, the Court must treat these motions as motions for summary judgment under Rule 56.

#### B. *Summary Judgment*

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing*

---

1. Plaintiff explains this seemingly inconsistent proceeding in state court was a means of protecting her interest should this Court rule the statute of limitations had run (Court File No. 51, Attachment, Motion to Stay State Court Proceedings).

2. As stated earlier, Highland Plaza Exxon also argues that plaintiff cannot prove causation with respect to it.

*Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

## IV. TENNESSEE STATUTE OF LIMITATIONS

### A. Rule for products liability cases

Tennessee through the Tennessee Products Liability Act of 1978 (Tenn.Code Ann. § 29–28–101 et seq.) has provided for limitation of actions in products liability cases such as this. Tenn.Code Ann. § 29–28–103 reads:

**Limitation of actions—exception.—(a)** Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.

### B. Tenn.Code Ann. § 28–3–104

Section 29–28–103 refers one to Tenn.Code Ann. § 28–3–104. In pertinent part this section reads as follows:

**Personal tort actions.—(a)** The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise;

(b) For the purpose of this section, in products liability cases: The cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product;

(2) No person shall be deprived of the right to maintain a cause of action until one (1) year from the date of the injury; and

(3) Under no circumstance shall the cause of action be barred before the person sustains an injury.

### C. *Tenn.Code Ann. § 28–1–106*

Section 28–1–106 provides for suspension of the statute of limitations for certain specified disabilities.

Persons under disability **on accrual of right.**—If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or his representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceed three (3) years, and in that case within three (3) years from the removal of such disability.

### D. *Purpose of Statute of Limitations*

In considering this issue, it is helpful to keep in mind the purpose of limitations on actions.

■ Statutes of limitation serve a worthwhile purpose. Such statutes are looked upon with favor. *West v. Cincinnati, N.O. & T.P. Ry. Co.*, 108 F.Supp. 276 (E.D.TN.1952); *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn. 1973). They prevent undue delay and help prevent loss of memory and evidence due to the passage of time. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818 (Tenn.1994); *Harden v. State*, 873 S.W.2d 2 (Tenn.Ct.App.1993). "[T]he Tennessee statute of limitations is designed to force suits to be brought without unreasonable delay so that neither party will be advantaged nor disadvantaged by the passage of time." *Vason v. Nickey*, 438 F.2d 242, 244 (6th Cir.1971).

Statutes of limitation have been part of the law of every civilized nation from time immemorial ... Such statutes, having the effect of denying any judicial remedy for the enforcement of an otherwise valid claim, are justified on grounds of policy and ... "designed to protect the citizens from stale and vexatious claims and to make an end to the possibility of litigation after the lapse of a reasonable time."

*Hargraves v. Brackett Stripping Machine Co.*, 317 F.Supp. 676, 682 (E.D.Tenn.1970) (citing *Guaranty Trust Company of New York v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)). The primary purpose of statutes of limitation is fairness to the defendant. *Monaghan v. SZS 33 Assocs., L.P.*, 827 F.Supp. 233, 241 (S.D.N.Y. 1993). The statute must not be construed as "permissive legislative enactment allowing a plaintiff to rest upon a stale claim." *Id.* at 242.

■ Legislatures take into accord the possible harshness of universal application of statutes of limitation by enacting tolling statutes. However, statutes tolling the running of statutes of limitation "should not be given ( ) expansive interpretation beyond [their] plain meaning." *Pigg v. Barge, Waggoner, Sumner and Cannon, Jabco*, 1988 WL 92523, *2 (Tenn.Ct.App., Sept. 9, 1988).

■ The purpose of tolling statutes based upon a personal disability is "to afford such person an additional amount of time to sue (McLaughlin, Practice Commentaries, McKinney's Cons.Laws of N.Y., Book 7B, CPLR 208:1, 261; cf. *Kaiser v. Cahn*, (2 Cir.1974), 510 F.2d 282); and exceptions to a limitations statute in favor of persons under disability should be strictly construed and never extended beyond their plain import (54 CJS Limitations of Actions § 216)." *Cohen v. Pearl River Union Free School Dist.*, 70 A.D.2d 94, 99–100, 419 N.Y.S.2d 998, 1001 (2d Dep't.1979), *rev'd on other grounds*, 51 N.Y.2d 256, 434 N.Y.S.2d 138, 414 N.E.2d 639 (1980).

■ The general rule is that tolling statutes based on disabilities only apply if the disability existed at the time the cause of action accrued. *Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn.Ct.App.1982):

The general rule, which is subject to some exceptions is that when a right of action has accrued, and there are parties competent to sue and be sued, limitations begin to run and will continue to do so notwithstanding any subsequent disability; the provisions suspending the operation of lim-

itations, or extending the period, in favor of persons under disability are confined to disabilities existing at the time the cause of action accrues to such person.

54 C.J.S., *Limitation of Actions* § 107.

## V. DISCUSSION

After considering the arguments of counsel and examining issues, the Court is of the opinion only one issue requires decision in this case. That issue is whether there is sufficient evidence to demonstrate Smith was of "unsound mind" at the time the cause of action accrued and continued to be of "unsound mind" until such time to allow this action to proceed. Although the parties have spent considerable time on related issues, the Court does not deem those issues dispositive nor conclusive. Accordingly, whether the chancellor's ruling was correct or not, whether that ruling has retroactive effect or not, whether a chancellor's retroactive ruling of incompetence can revive an expired cause of action, whether Smith knew about the injury or not at the time the injury occurred, and whether he had counsel or not, are not determinative in the Court's view. The sole issue is whether Smith was of "unsound mind" for such a time period to avail himself of section 28–1–106.

With the issue thus narrowly framed, the Court will examine the matter in light of the facts.

### A. Tennessee law controls

Since the Court's jurisdiction in this case is based upon diversity of citizenship, substantive legal issues are governed by state law. Tennessee law controls on this subject. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Jones v. Wittenberg University,* 534 F.2d 1203, 1207 (6th Cir.1976).

### B. Burden is on Plaintiff

Since the defendants have pointed out the plaintiff's action is apparently barred by the statute of limitations, the burden shifts to the plaintiff to demonstrate the statute was tolled. Plaintiff has the burden to prove Smith was of unsound mind during the entire time necessary to toll the statute. *Parham*

*v. Walker,* 568 S.W.2d 622, 624 (Tenn.Ct.App. 1978)

### C. Chancellor's Decree

Plaintiff places great reliance on the chancellor's decree Smith was incompetent and was incompetent from the date of the injury. In fact, in plaintiff's Response to Defendants' General Motors Corporation and Sam Hill Automobile Repair Responses to Plaintiff's Motion for Certification of Questions of State Law (Court File No. 32, p. 22), plaintiff argues that in Tennessee an order of incompetency is conclusive. Plaintiff cites *Jackson v. Van Dresser,* 188 Tenn. 384, 219 S.W.2d 896 (1949), for this proposition.

Plaintiff also acknowledges that the dominant line of authority holds that such a decree is just "some evidence" of incapacity at any time prior to the decree. *Foster v. Allbright,* 631 S.W.2d at 150.

Consequently, the Court has considered *Jackson* and does not agree an adjudication is conclusive of the issue. The appointment of a guardian and a decision someone is incompetent is not necessarily an adjudication of an unsound mind. *Parham v. Walker,* 568 S.W.2d at 624.

The Court notes that plaintiff correctly points out such decrees may not be collaterally attacked. *Foster v. Allbright,* 631 S.W.2d at 149. Hence, this Court in its decision today is not negating the chancellor's decree, but is simply determining if an issue of fact remains regarding Mr. Smith's competency.

### D. Discovery Rule

Tennessee follows the "discovery rule" with regard to when a cause of action accrues and when the statute of limitations begins to run. Most recently, in *Doe v. Coffee County Bd. of Educ.,* 852 S.W.2d 899 (Tenn.Ct.App.1992), this issue was addressed. The court there said:

Under our formulation of the discovery rule, the statute of limitations begins to run when the injury occurs or when the plaintiff discovers or should have discovered that he or she has a right of action ...

A cause of action is deemed to be discovered when the plaintiff knows that he or she has been injured and who caused the injury ... Discovery is not postponed until the plaintiff becomes fully aware of all the injurious effects of the defendant's conduct ...

The discovery rule applies only to matters of fact ... It tolls the running of the statute of limitations only during the period when the plaintiff has no knowledge at all that a wrong has occurred. (Citations omitted).

*Id.* at 904.

### E. Was Smith of "Unsound Mind?"

Although the statute, Tenn.Code Ann. § 28–1–106, does not define "unsound mind," Tennessee case law does provide definitions. In *Doe v. Coffee County Bd. of Educ.,* the Tennessee Court of Appeals stated:

While the statute itself does not define the term "unsound mind,' an early case construing the statute's predecessor applied it to an elderly woman found to be "incapable of attending to any business, or of taking care of herself." *Porter v. Porter,* 22 Tenn. (3 Hum.) 586, 589 (1942).

*Id.* 852 S.W.2d at 905.

The court went on to say that this definition is consistent with other authorities.

The *Porter v. Porter* formulation is generally consistent with the common understanding of "unsound mind," *Sheats v. Tri–Cities' Hosp. Auth.,* 167 Ga.App. 122, 306 S.E.2d 75, 76 (1983); 56 C.J.S. *Mental Health* § 2, at 500 (1992); 54 C.J.S. *Limitation of Actions* § 117 (1987); 44 C.J.S. *Insane Persons* § 2, at 46 (1945), and is consistent with the decisions of other jurisdictions applying similar statutes to cases involving child sexual abuse. (Citations omitted).

*Id.*

This standard then has two components; one, is the person alleged to be of unsound mind incapable of attending to *any* business, or two, is the person alleged to be of unsound mind incapable of taking care of himself or herself.

The Court finds helpful Tennessee cases discussing soundness of mind in considering testamentary capacity. In *Rogers v. Hickam,* 30 Tenn.App. 504, 208 S.W.2d 34 (1947), the court observed that one is not rendered incapable (i.e., of unsound mind) to make "a will by mere physical weakness or diseases, old age, eccentricities, blunt perceptions, weakening judgment, failing mind or memory, or addiction to the use of intoxicating liquors...." *Id.* 208 S.W.2d at 38.

■ Cases from other states have construed the term similarly. See *Lawson v. Glover,* 957 F.2d 801 (11th Cir.1987) (Georgia construction); *Tri–Cities Hospital v. Sheats,* 156 Ga.App. 28, 273 S.E.2d 903 (1980); *Boudreau v. Landry,* 404 Mass. 528, 536 N.E.2d 339 (1989). As a result, in the Court's opinion, the case comes down simply to what evidence supports and contradicts the notion that Smith was of "unsound mind" for a sufficient period to toll the statute of limitations and allow this action to proceed. That is, what evidence is there to support or contradict the allegation that Smith was incapable of attending to any business or of taking care of himself.

In favor of Smith is the following: he testified in his deposition that he had memory losses; he was fired from his employment with Zep; the Social Security Administration has awarded him a total disability; the Chancellor's decree adjudging him incompetent; and Drs. Hunt and Gibson's testimony that he had mental dysfunction, he suffered from toxic encephalopathy marked by clear evidence of decrease in attention, severe memory problem, difficulty with execution functions related to planning and follow through, learning difficulties, slow in thinking, slow and delayed responses, difficulties in language function, poor concentration, anhedonia and slowed psychomotor processing; and that he was periodically disoriented and was unable to care for himself and was unaware of what was going on around him.

Evidence contradicting Smith's being of unsound mind would include the following: he discussed his possible exposure to carbon monoxide with fellow employees at Safety Kleen; he sought medical attention for his symptoms; he was concerned about his pos-

sible exposure; he resigned from his position at Safety Kleen; he obtained new employment with Zep Manufacturing immediately leaving Safety Kleen; he worked for Zep Manufacturing for some ten and one half months; there is no indication that anyone questioned his competence at Zep Manufacturing; he hired the law firm of Jenkins and Bradshaw to represent him in a workman's compensation claim against Safety Kleen and a possible products liability claim against those responsible for the carbon monoxide leak; he allegedly signed the pleading for the workmen's compensation suit; he gave testimony in a deposition regarding this suit; there is no indication that during the representation by Jenkins and Bradshaw that they ever questioned his competency; he fired Jenkins and Bradshaw; and he hired present counsel.

Although Plaintiff argues to the contrary, the Court does deem it relevant that Smith's wife, plaintiff herein, participated in a number of conversations with Smith, his doctors, and Jenkins and Bradshaw regarding his injury and the possibility of bringing a products liability law suit. The Court also deems it relevant that a workman's compensation suit was prosecuted by Smith during the period he would have had to have been of unsound mind for plaintiff to prevail.

This issue would face the Court with or without the chancellor's decision. As mentioned earlier, Plaintiff correctly points this out in her reply to defendants' response to her motion for certification (Court File No. 32, p. 13, n. 7).

## VI. IS THERE SUFFICIENT EVIDENCE TO SURVIVE SUMMARY JUDGMENT?

Resolution of this issue involves two distinct analyses. First, at this stage of the case where the Court must concern itself primarily with the pleadings, has sufficient evidence been presented to survive the summary judgment challenge. Assuming that plaintiff has survived summary judgment, the Court must then consider resolution of the issue prior to trial on the merits. Resolving the first question in favor of plaintiff does not mean the Court holds that the statute of

limitations was tolled, it only means a genuine issue of fact remains.

Plaintiff argues that the question whether Smith was of unsound mind is a jury question. She cites *Nashville R.R. v. Brundige,* 114 Tenn. 31, 84 S.W. 805 (1904) for this proposition. She also argues that where there is some evidence of unsoundness of mind, a question of fact is presented that must be determined by the jury. In support of this argument she cites *Phillips v. Sugrue,* 800 F.Supp. 789 (E.D.Ark.1992); *Foster v. Allbright,* 631 S.W.2d 147 (Tenn.Ct.App. 1982); *Hager v. Hager,* 13 Tenn.App. 23 (1930); and *Anonymous v. Anonymous,* 154 Misc.2d 46, 584 N.Y.S.2d 713 (1992).

█ Indeed, unsoundness of mind is a question of fact. *R.J. Reynolds Tobacco Co. v. Hudson,* 314 F.2d 776, 779 (5th Cir.1963); *Hildebrand v. Hildebrand,* 736 F.Supp. 1512, 1524 (S.D.Ind.1990). However, before deciding whether this is a jury question, the Court must first determine if there is enough evidence of Smith's alleged inability to manage his own affairs to create a genuinely disputed issue of fact. *Hildebrand,* at 1524; 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2734 (1983).

The evidence presented by both parties regarding Mr. Smith's unsoundness of mind was discussed earlier in this memorandum. Viewing this evidence in a light most favorable to the nonmovant, or the plaintiff in this case, the Court finds sufficient evidence to warrant denial of summary judgment.

> Where ... the decision of a question of law by the Court depends upon an inquiry into surrounding facts and circumstances, the Court should refuse to grant a motion for summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.

*Palmer v. Chamberlin,* 191 F.2d 532, 540 (5th Cir.1951).

Accordingly, the Court will **DENY** the summary judgment motions of Sam Hill Automotive Repair, Grumman–Olsen and General Motors.

## VII. RESOLUTION OF ISSUE BEFORE TRIAL

Having decided that plaintiff has survived summary judgment, the Court now turns to the matter of resolving this issue prior to trial on the merits. In the Court's view, it would be an inefficient use of the Court's time and the parties' time to allow this issue to remain until the conclusion of the trial on the merits. Such a course would require the parties to conduct expensive and time consuming pretrial discovery and trial preparation for a case where the jury might well decide the case was time barred.

In one of the cases submitted to the Court by plaintiff, *Anonymous v. Anonymous,* 154 Misc.2d 46, 584 N.Y.S.2d 713 (Sup.1992), the court decided to hold a fact-finding hearing. Citing several New York authorities, the court said that it should conduct such a hearing. It directed counsel to conduct discovery and to furnish the court with medical reports or opinions. *Id.* 584 N.Y.S.2d at 721–22. From reading the case, it is apparent that the court there determined to conduct the hearing himself without a jury.

Rule 42(b) of the Federal Rules of Civil Procedure gives a court authority to order a separate trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...." *Fed.R.Civ.P.* 42(b). A court may order a separate trial of a statute of limitations issue. 9 Wright, Miller and Kane, *Federal Practice and Procedure* § 2389 (1983); *Kimmel v. Paul, Weiss, Rifkind, Wharton & Garrison,* 1995 WL 232737 (S.D.N.Y. April 19, 1995). Accordingly, in the interest of convenience and economy, the Court is considering ordering a trial for the sole purpose of determining whether Mr. Smith was of unsound mind when the statute of limitations accrued and whether his unsoundness of mind continued for a sufficient period to toll the running of the statute of limitations. The Court invites the comments and suggestions of counsel on this matter. Counsel shall be prepared to take up that question at the scheduling conference. Whether the trier of fact in the resolution of the statute of limitations issue should be a jury or the Court also will be discussed at the scheduling conference.

## VIII. DISMISSAL OF EXXON

Highland Plaza Exxon has pointed to a deficiency of evidence in the plaintiff's case with respect to it. Plaintiff has not come forward with evidence showing that there is a contested issue of fact present. Accordingly, the Court will **GRANT** the motion for summary judgment of Highland Plaza Exxon and will dismiss it with prejudice from this litigation.

## IX. CONCLUSION

In conclusion, the Court will **DENY** the motions for summary judgment presented by defendants Sam Hill Automotive, General Motors, and Grumman–Olsen. However, the Court invites comments and suggestions on whether a separate trial to determine if Mr. Smith was of unsound mind at the time the statute of limitations accrued should be held. The summary judgment motion of defendant Highland Plaza Exxon will be **GRANTED.**

An order will enter.

### ORDER

It is hereby **ORDERED** that the motions for summary judgment presented by defendants Grumman–Olsen Corporation (Court File No. 33), General Motors (Court File No. 24), Sam Hill Automotive (Court File No. 15), are **DENIED;** the summary judgment motion of Highland Plaza Exxon (Court File No. 11), is **GRANTED.**

**SO ORDERED.**