THOMAS W. FINUCANE CORP., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 39881.)

Court of Claims, December 15, 1966.

*Harris, Beach, Keating, Wilcox, Dale & Linowitz* (*James M. Hartman* of counsel), for claimant. *Louis J. Lefkowitz, Attorney-General* (*Ralph W. Jackson, Sr.,* of counsel), for defendant.

J. EUGENE GODDARD, J. This case comes to us for retrial having been remitted from the Appellate Division. (26 A D 2d 768.)

This is a claim for the appropriation of claimant's land pursuant to section 30 of the Highway Law and acts amendatory thereto, which proceeding is described as Eastern Expressway Interstate Route Connection 580-2-7, Monroe County, on Map No. 375, Parcel Nos. 379 and 380 and a temporary easement on Map No. 376, Parcel No. 381. The aforesaid maps and description were filed in Monroe County Clerk's office on March 31, 1960, and personal service was made on the claimant on March 31, 1960. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on November 28, 1961 and has not been assigned or submitted to any other court or tribunal for audit or determination, except for the prior trial had herein. The court adopts the description of the appropriated property as shown on the map and description filed in the Monroe County

Clerk's office, a copy of which is attached to the claim and same is incorporated herein by reference.

Claimant was the owner of the property by reason of eight deeds all recorded in Monroe County Clerk's office.

Before the appropriation the property consisted of a shopping center at 1880-1920 East Avenue, Rochester, New York. It had a frontage of 285.05 feet on the north side of East Avenue and ran through to the south side of University Avenue where the frontage was 351.19 feet. Both road frontages were at grade level. The easterly boundary line was 176.22 feet and the westerly boundary line was irregular extending 167.31 feet northerly from East Avenue, then westerly 65 feet and then 101.84 feet northerly to University Avenue, containing approximately 65,899 square feet. The property was zoned "B-2 Business District".

The property was improved with a one-story building of masonry block construction with a flat built-up roof. It contained 17,463 square feet of area and a loading dock in the rear which occupied 504 square feet. The building was divided into three stores as follows:

1880 East Avenue contained a rentable area of 3,858 square feet. It was leased to Main Street Daw Drug Co., Inc. for a retail drug store and sundry lines under an eight-year lease expiring December 1, 1964 at an annual rental of $5,000, which represented $1.30 per square foot.

1882 East Avenue contained a rental area of 11,985 square feet. It was leased to Loblaw, Inc. for a chain grocery store under a 10-year lease expiring January 1, 1965 at an annual rental of $15,300 which represented $1.28 per square foot.

1884 East Avenue contained a rental area of 1,620 square feet. It was leased to Star Palace Laundry & Dry Cleaners under a 5-year lease expiring November 1, 1961 at an annual rental of $3,000, which represents $1.85 per square foot.

The tenants were responsible for water, gas, electricity, heat, and ordinary repairs. The owner was responsible for taxes, insurance, major structural and exterior repairs, maintenance and lighting of the parking area.

The paved land area, after deducting the areas occupied by the building, loading docks and sidewalks comprised approximately 45,500 square feet which was sufficient to provide 127 parking spaces for automobiles. This parking area complied with the requirements under the Zoning Ordinance of the City of Rochester which provides that the ratio of parking space to occupied store space shall be 3 to 1.

The claimant offered the testimony of two real estate appraisers and a qualified expert on parking facilities. Witness Grunert testified that the use of the property as a small neighborhood shopping center was an under-improvement of the site; that its highest and best use prior to the appropriation was for the construction of a more profitable commercial building such as a multiple store office building or as a motel. He valued the land at $238,400 based on $500 per unit front foot, said unit being considered as a strip of land 1 foot wide by 100 feet in depth, allowing a declining percentage for value of land beyond the 100-foot depth. He further testified that the present rent scale was less than the true rental value of the premises largely because the rents had been established under leases made several years prior to the date of taking. He gave a figure of $2.25 per square foot as the true economic value of the rented premises and by capitalizing this figure, came up with a total valuation on the date of taking of $316,500.

Witness Borchard, the other appraiser for the claimant, agreed that the highest and best use of the property prior to the taking was for a retail and office building. He valued the land which he estimated contained 67,012 square feet, rather than the 65,899 as found by the court, at $3.00 per square foot which he rounded to $201,000 and the depreciated value of the building at $169,500 for a total of $365,000.

The State's appraiser testified that the highest and best use of the subject property prior to the appropriation was its current use as a shopping center. He used three approaches to arrive at the fair and reasonable value. Under the market approach he cited three comparable sales of shopping centers and by dividing the sale price by the number of square feet of store space, arrived at a value of $14 per square foot and by multiplying this by 17,208 square feet arrived at a total before value of $241,000 for the subject property. Under this method he disregarded entirely the area devoted to parking. His comparable sales did not have the 3:1 ratio of the subject property, and the court finds that such a method of arriving at value is worthless under these circumstances. Under the income method, he based his figures on the existing rents at $1.35 per square foot for the balance of the lease terms (about 4 years) and then estimated an increase to $1.50 per square foot for the next 15 years and under the Inwood premises, he capitalized this to arrive at a valuation of $214,600, including the reversionary value of the land based on an original $2 per square foot. The court notes that the Inwood premises has been criticized in many

cases unless it is for a specialized use or where we have wasting assets. Under his cost approach, he gave a total valuation of $264,400 based on an estimate to reconstruct the building at $10 per square foot, depreciated 30%, or $132,600 to which he added $131,800 for the land value. After consideration of his three methods, he concluded $235,000 represented his estimate of value.

The court has again viewed the property for the purposes of this decision, but has been familiar with it for over 40 years. This is a prime commercial location on the fringe of the city limits and adjacent to the Towns of Brighton and Pittsford and the highest priced residential community in this area. The subject property was in the approximate center of a ¾ mile strip called a B-2 or Community Business District. The latest map published by the Department of Public Works of the State of New York showed the average daily traffic count at this location was 18,300 vehicles, which was the highest count at the point of entry of any traffic artery leading into the City of Rochester.

The three real estate appraisers put the land value at $131,800, $201,000 and $238,425. The court finds that the fair and reasonable value of the land at the time of the appropriation was $3 per square foot, or $197,697.

The court finds that the fair and reasonable valuation of the improvements was $165,000. This sum is arrived at by full consideration of the testimony of the three appraisers and the corroborating evidence offered by the building contractor as to the original cost of the building allowing for the increase in costs of construction since that time and deducting reasonable depreciation.

The court finds that the value of the subject property before the appropriation was $362,697, and that its highest and best use was for prime commercial purposes where adequate off-street parking was required.

The State appropriated the following areas:

Parcel No. 379 was a strip of land 6.0 feet wide and 119.68 feet, or 719 square feet in area, taken from the eastern part of subject property along the frontage on the north side of East Avenue.

Parcel No. 380 was a strip of land extending over the entire rear of claimant's property fronting 351.19 feet on the south side of University Avenue. The southern boundary of said appropriated parcel was 370.35 feet in length and the depth along claimant's eastern boundary line was 70.22 feet and the depth along the western boundary line was 14 feet. The appro-

priation reserved to the owner of the property, and such owner's successors and assigns, the right to maintain a driveway over the western 34.5 feet of said parcel in a manner satisfactory to the Superintendent of Public Works provided it did not interfere with the use of the property for highway purposes.

Parcel 381 was taken in temporary easement over a strip of land approximately 10 feet deep and running approximately 285 feet along the entire frontage of subject property on the north side of East Avenue. This was for slope grading and there was reserved to claimant the right of using this property providing such use did not interfere with the State's use of it.

At the time of the appropriation, the claimant had unlimited access to the entire University Avenue frontage of 351.19 feet. There were five street curb cuts on that street providing access to subject property. After the appropriation, and the change of grade, the only access available to the subject property was over the 34.5 foot strip at the extreme west end of the property as provided in the driveway easement and right of way. The taking reduced 90% the existing access frontage on University Avenue. The access frontage on East Avenue where two curb cuts were formerly available was reduced 42% and only one outlet was available.

No damages can be awarded for this reduction in available access or change of grade under the law of this State since the State provided reasonable access after the appropriation to the subject property and these factors have not been considered in any award of damages herein.

The property taken by the State amounted to 14,053 square feet out of a total of 65,899 square feet before the appropriation, or 21.33%. Since we put a land valuation of $200,000 on the land, this direct damage amounts to $42,159.

The claimant is also entitled to severance damage to the remaining property because of the reduction of land size, the irregular shape of the remainder, the loss of parking space essential to the use of the property and the difficulty arising from the optimum use of the remaining parking space. Before the appropriation the subject premises represented an efficient operation of a shopping center of three stores with adequate parking space in accordance with zoning requirements. The taking reduced the available parking spaces from 127 to 50, a reduction of over 60%. After the appropriation the distance from the loading docks at the rear of the stores and the barricade fence erected by the State along the University Avenue property line has been reduced from 46 feet to 19.8 feet. Evidence was offered to prove that when a large truck is backed up to

the loading docks, there is insufficient room for other vehicles to pass along the narrow strip available. Large trucks which enter from University Avenue must exit by East Avenue as there is insufficient space for them to maneuver and turn around.

After the appropriation, all of the tenants vacated the premises because of loss of business due to the taking. The claimant lost a substantial amount of rent and was compelled to make extensive alterations to secure less desirable new tenants, who were willing to accept the available decreased parking space.

The highest and best use of the property after the appropriation was reduced to its use by occupants engaged in a secondary retail or semi-retail business requiring less than a prime commercial neighborhood location with a substantially reduced requirement for off-street parking facilities.

Severance damage must be awarded to the claimant for the consequential damages arising from this appropriation. A summary of the testimony of the various real estate appraisers is as follows:

|  | Borchard | Grunert | Wills |
|---|---|---|---|
| Before valuation of land................... | $201,000 | $238,400 | $131,800 |
| Before valuation of improvements........... | 169,500 | 78,100 | 103,200 |
| Total Valuation............................ | $370,500 | $316,500 | $235,000 |
| (Which he rounded in his final appraisal to... | $365,000.) | | |
| Allowed for direct damage................. | 42,159 | 52,800 | 28,106 |
| After valuation of land | | 91,000 | 67,400 |
| After valuation of improvements | 98,700 | 6,000 | 38,000 |
| % of Decrease in value (attributed to severance damage) | | | |
| Land | | 51.6% | 35% |
| Buildings | 37.5% | 92.1% | 63.2% |

The witness Borchard did not allocate separate amounts to the land and improvements on his after valuation. After allowing for the direct damages awarded herein for the taking of 14,053 square feet, the court finds that the remaining 51,846 square feet has decreased in value from $3 per square foot to $1.80 per square foot, or 40%, and was worth $93,322.80 after the taking.

The court finds that the improvements which were worth $165,000 before the taking have decreased in value 50% and the after valuation is $82,500. The total valuation of the subject property after the appropriation was $175,822.80.

The court finds that the value of the easement on Parcel 381 was $1,500.

The court finds that the fair and reasonable market value of the subject property before the taking was $362,697; that the fair and reasonable market value of the subject property after the taking was $175,822.80; and that the amount by which the claimant has been damaged is $186,874.20; of this amount $42,159 represents direct damage and $144,715.20 represents consequential damage to the remainder. In addition thereto, the claimant is entitled to recover the sum of $1,500 as the fair rental value of said premises encumbered during the duration of the easement making a total of $188,374.20 for which the claimant is entitled to an award together with appropriate interest.

The claimant is awarded the sum of $188,374.20 for all damages, direct and consequential, with interest thereon from March 31, 1960 to September 30, 1960, and from November 28, 1961 to the date of entry of judgment herein.