MIL-PINE PLAZA, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 51314.)

Fourth Department, July 18, 1975

*Gellman & Gellman (Philip S. Gellman* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Joseph F. Gibbons* and *Ruth Kessler Toch* of counsel), for respondent.

SIMONS, J. Claimant is the owner of 7.185 acres of real property located at the intersection of Pine Avenue and Military Road in the City of Niagara Falls, New York. The property is developed as a shopping center containing nine stores with parking facilities for over 500 cars. On February 18, 1966 the State appropriated 8,720 square feet of land for highway purposes. The appropriation consisted of two strips of land, one 17 feet wide along Pine Avenue and the other 7 feet wide along Military Road. Various lease provisions required claimant to provide its tenants with minimum parking, either 500 parking spaces within 500 feet of the respective leased stores or a ratio of 3.5 square feet of parking per square foot of store space.

Learning of the State's pending appropriation, claimant acting through a subsidiary, 85 Pine Realty Corporation, purchased an adjoining piece of property for $125,000 to help compensate for the 41 parking spaces it anticipated losing. This acquisition provided an additional 25 parking spaces on the rear of the site behind an existing store on the newly purchased premises. Claimant also leased a parcel across the road to provide 16 parking spaces for 10 years at an annual rent of $5,800. The trial court awarded claimant direct damages of $29,216 computed at $2.50 per square foot for the land and $7,416 for improvements. The court found that lease provisions requiring claimant to provide minimum parking had expired and therefore it agreed with the State's contention that there was no consequential damage to the subject property. Claimant appeals from the judgment.

It is "well settled in this State that, where there is a partial taking, consequential damages which ensue upon the taking are to be considered in determining the award". *(Dennison v State of New York,* 22 NY2d 409, 412.) It has also been held that a loss of parking spaces as a result of partial taking of property developed as a shopping center can be an element of consequential damages *(Finucane Corp. v State of New York,* 52 Misc 2d 462, affd 30 AD2d 777).

The difficulty with this claim is the befogging effect produced by the parking requirements contained in the store leases and the substantial prices claimant paid to acquire additional parking areas to satisfy these requirements. Stripping the case of these considerations, an observer could reasonably find that no consequential damage resulted to this shopping center with a 500-car parking lot by a taking of 8% of its parking space. That is what the trial court found as a fact and the finding was supported not only by the State's evidence but by the testimony of claimant's appraiser also. He testified that in the absence of minimum parking requirements in the leases, the parking available after the taking was adequate. Nevertheless, the leases contained these provisions and we find them binding upon claimant.

The issue is what consequential damage resulted from the taking which diminished the available parking spaces below the minima required. That damage, if any, must be determined by the standard before and after test with market values determined by recognized methods of valuation. The record does not contain such evidence.

Claimant used two whole-to-whole comparables for before value. These were 23-store shopping centers, one located in Cheektowaga and the other in North Tonawanda. The only after value comparable was a shopping center located immediately across the intersection from the subject property. The appraiser then applied a formula he described as the "gross rent multiplier", the ratio of gross rents to sales price, to the three before and after comparables and found damages of $171,850. Such adjustments as he made were not applied to the market data, but to this "multiplier". Whatever the theoretical value of the formula may be, and the brief cites no case or textbook recognizing it, it is worthless when applied to the facts of this case. Of what possible significance are the gross rents of these shopping centers in Cheektowaga and North Tonawanda as evidence of before market value in Niagara Falls? Certainly an investor would not credit them with any weight in determining the market value of the subject property and the court should not. Ideally, commercial property is valued by capitalizing the income, or, acceptably by the use of market data. The gross rentals, particularly in areas well-removed from the subject, have little evidentiary value and are affected by a wide variety of management and

vacancy factors. The record therefore has no legally acceptable evidence of consequential damage.

Claimant's appraiser also made a "cost to cure" evaluation based upon the cost of acquiring parking from 85 Pine Realty Corporation, a wholly owned subsidiary, and Conbow, a corporation having common stockholders with claimant. Claimant, acting through 85 Pine Realty, purchased 29,000 square feet of land plus an obsolete building adjacent to the subject premises and leased the parking space from Conbow. These costs may not be used to support an award because no consequential damage has been proven (cf. *Goldsmith v State of New York,* 32 AD2d 607), but even if the "multiplier" theory is accepted for that purpose the weakness of this evidence can be illustrated by examining it.

Claimant's appraiser testified that the subject's land was worth $2.50 per square foot. The figure is equal to the direct damages awarded here and is consistent with the testimony and award in the 85 Pine Realty Corp. appropriation (see 45 AD2d 819). Nevertheless, on this trial claimant's expert testified that the 14,000 square feet at the rear of 85 Pine Realty which was incorporated into Mil-Pine's parking area had a value of $100,000 or approximately $8 per square foot and the remaining 15,000 square feet of that purchase, including the building on it, was worth only $25,000. He asserted that this value was based upon a residual land value approach but no detail of any kind supported his valuation (cf. *St. Patrick's Church v State of New York,* 30 AD2d 473). The Conbow lease was valued at $58,000, i.e., $5,800 per year for 10 years for an area of unspecified size to accommodate 16 parking spaces. In short, all that the acquisition prices prove is that claimant paid a great deal of money to acquire additional parking, far more than the $2.50 per square foot which its expert believed that land in the area was worth. The price did not prove a "cost to cure", because an owner cannot charge the costs of obtaining new facilities to the condemnor (4A Nichols, Eminent Domain [3d ed], § 14.2472). Such expenses are unrelated to the appropriation.

We may speculate that if these leases had been breached by the failure to provide the specified parking, subsequent tenants might pay less for the premises, but there is no testimony to support that contention. If such was the case, then the consequential damage to the remainder resulting from the

taking must be established in traditional ways (5 Nichols, Eminent Domain [3d ed], § 23.5).

The judgment should be reversed and a new trial granted on the issue of consequential damages only.

MARSH, P. J., MOULE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts, without costs, and a new trial granted in accordance with opinion by SIMONS, J.