MIL-PINE PLAZA, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 51314.)

Fourth Department, February 20, 1980

### APPEARANCES OF COUNSEL

*Gellman & Gellman (Philip S. Gellman* of counsel), for appellant.

*Robert Abrams, Attorney-General (Vernon Stuart* and *Jeremiah Jochnowitz* of counsel), for respondent.

### OPINION OF THE COURT

MOULE, J.

In 1966 the State appropriated 8,270 square feet of claimant's land. The appropriated land consisted of two perpendicular strips, abutting Military Road and Pine Avenue in Niagara Falls and meeting at the intersection of those roads. After the first trial of this claim, the court awarded claimant a total of $29,216 in direct damages, based upon its assessment of the value of the land taken at $2.50 per square foot, and upon the value of various improvements taken, stipulated to be $7,416 (*Mil-Pine Plaza v State of New York,* Court of Claims, Dec. 11, 1973, COOKE, J.). The court found, though the appropriation resulted in a loss to claimant of from 37 to 41 parking spaces, claimant had failed to prove that the loss of these spaces gave rise to consequential damages to the remainder of claimant's property.

Upon appeal, we reversed and ordered a new trial on the issue of consequential damages only (*Mil-Pine Plaza v State of New York,* 48 AD2d 532). The leases held by several of claimant's tenants required that claimant maintain 500 parking spaces, and the taking would have reduced the available parking below that number had claimant not obtained additional parking on adjoining property. We found that, even in the absence of evidence that the parking would have been inadequate after the appropriation without the acquisition of additional spaces, the leases were binding upon claimant, and the reduction of available spaces below the required number might result in consequential damages. Whether such damages did exist was to be ascertained by application of the standard before and after test with values to be determined by recognized methods of valuation. Implicit in our decision was a recognition that the "before" and "after" values adopted by the court in the first trial were artificial. The court apparently first determined direct damages to be $29,216 and then chose "before" and "after" values calculated to arrive at that predetermined damages figure, thereby precluding any possibility of finding consequential damages.

At the second trial both claimant and the State submitted "before" and "after" valuations based upon the income and market data approaches. The State additionally submitted a cost approach valuation which we disregard because the subject property is not a specialty *(Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507). The court found that though both parties presented evidence of the "before" and "after" value of the property, claimant had failed to show what damage, if any, flowed from claimant's inability to comply with the parking requirements of the leases. The court made no findings of value and ordered a trial *de novo,* with new appraisals to be submitted by both sides.

■ As a general rule the measure of damages for a partial taking is the difference between the property's value before condemnation and the value of the remainder afterward *(McDonald v State of New York,* 42 NY2d 900; *Acme Theatres v State of New York,* 26 NY2d 385). As a corollary to this principle, consequential damages are measured by the difference between the "before" and "after" values, less the value of the land and improvements appropriated *(Hewitt v State of New York,* 54 AD2d 812). Where the before and after approach is used, both the "before" and the "after" valuations must be calculated by the same method *(Diocese of Buffalo v State of New York,* 24 NY2d 320, 326).

■ Claimant's market data valuation adopted the "before" value of $1,202,000 found by the court in the first trial. Claimant's "after" value using the market data approach was $1,034,000, showing total damages of $168,000. Deducting the direct damages already determined, this indicated consequential damages of $138,784. We cannot accept this figure.

Nothing in the record supports claimant's use of the "before" value found by the court in the first trial. Claimant utilized an unrecognized formula in its market data valuation at that trial, and we explicitly rejected that formula upon appeal. To the extent, therefore, that the court's "before" value reflected claimant's valuation, it must be rejected. Furthermore, neither can the court's "before" value be justified by reliance upon the State's appraisal in the first trial, since that appraisal was based upon the erroneous inclusion of an adjacent property not part of the subject parcel. The appraiser made a correction for this error during the second trial.

Since consequential damages have not been established by claimant's market data approach, we turn to its income

approach valuation of the subject property. Using this approach, claimant's appraisal establishes a "before" value of $1,202,800 and an "after" value of $1,045,114, indicating consequential damages of $132,545.

In explaining the "after" value under this approach, claimant asserts that, since 41 parking spaces have been lost through the appropriation, and since those spaces represent 8.1% of claimant's former total parking area, claimant has suffered an 8.1% loss of gross rental income. After deducting this loss and operating expenses from the annual income figure used in its "before" income valuation, claimant applied a 10% capitalization rate to arrive at $1,074,330. Claimant deducted from this amount the $29,216 in direct damages established by the first court to obtain an "after" value of $1,045,114 for the subject property.

First, we note that the final deduction of the direct damages must be rejected. The difference between the "before" and "after" values, using the income approach, reflects claimant's entire loss, including both direct damages and diminution in remainder value (see *Matter of City of New York [Civitano-Humble Oil & Refining Co.]*, 39 NY2d 453). It would, therefore, be improper to allow a deduction of the direct damages from the figure which ostensibly reflects the reduction in the subject's rental value, since this would result in a double recovery for the same element of damage.

Claimant's "after" value, even if adjusted upward to $1,074,-330, must still be rejected, however, because claimant's attempt to equate an 8.1% loss of parking to an 8.1% loss of gross income is impermissible. This court's prior decision refers to the first trial court's finding, supported by both sides' testimony at that trial, that, even with the loss of 8% of claimant's parking space, there was adequate parking after the appropriation (48 AD2d 532, 534, *supra*). Claimant's appraiser attempted to overcome this finding in the second trial by testifying that parking would have been inadequate during peak periods after the taking if additional parking space had not been obtained. We need not reach a determination regarding the adequacy of the parking after the taking, however, since whatever the merits of that issue might be, we cannot accept a one-to-one correlation between loss of parking and reduction of income. Claimant's tenants are clearly paying for more than parking space. Additionally, the State's appraisal shows that the income from a neighboring property, Pine

Plaza, from which there was an appropriation of parking spaces more crucial than in the present case, continued to increase in the years subsequent to the taking from that property. In view of this we cannot accept claimant's income approach valuation.

The State's "before" and "after" valuations indicated, as they had in the previous trial, total damages which were less than the direct damages already awarded, indicating no consequential damages. Though the State's appraisal was not faultless, the burden is upon the claimant to prove consequential damages and to furnish a basis from which a reasonable estimate of those damages can be made (4A Nichols, Eminent Domain [3d ed], § 14.21, subd 2; see *Wickham Lake Homes v State of New York,* 55 AD2d 976). Since claimant has twice failed to sustain its burden of proving consequential damages by competent evidence, we see no reason to grant it a third opportunity to do so. The order for a new trial should be reversed and the claim for consequential damages should be dismissed.

SIMONS, J. P., SCHNEPP, CALLAHAN and WITMER, JJ., concur.

Order unanimously reversed, without costs and claim for consequential damages dismissed.