IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 28, 2001 Session

## DOROTHY JEAN OWEN, ET AL. v. GEORGE D. SUMMERS

**A Direct Appeal from the Chancery Court for Fayette County**
**No. 11797      The Honorable Dewey C. Whitenton, Judge**

_____

**No. W2001-00727-COA-R3-CV - Filed December 28, 2001**

_____

This is an action to set aside a warranty deed. Plaintiff-Grantor filed suit on February 11, 1997, to set aside a deed executed July 11, 1989, on the grounds of fraud and mental incompetency. The defendant grantee denied fraud and mental incompetency and affirmatively relied upon the seven-year statute of limitations. Following a jury trial, which ended in a mistrial, the parties stipulated that the case be submitted to the chancellor who conducted the trial for a nonjury determination from the trial transcript and trial exhibits. The chancellor found that the seven-year statute of limitations had been tolled by virtue of the grantor's mental incompetence, the deed was procured by fraud, and that the grantor was mentally incompetent on the date of the execution of the deed. The chancellor rescinded the deed. Defendant-Grantee has appealed. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

John D. Horne, Memphis, For Appellant, George D. Summers

J. Houston Gordon, Covington, For Appellees, Dorothy Jean Owen on relation of Jospeh B. Owen, Jr.

**OPINION**

This case involves a transfer of the one-third undivided interest in a 461-acre farm[1] located in Fayette County, Tennessee (the "Property"), which was owned in April of 1989 by Anita Joyce Owen, Eola Summers, and Joseph B. Owen, Jr., as co-tenants. On June 10, 1989, Mr. Owen signed a contract for sale of his interest in the property to the defendant, George D. Summers, receiving an earnest money check for $125.00 in addition to $10.00 previously paid, and another check for $50.00. The purchase price set out at $25,000.00 was to be paid: $5,000.00 upon execution of the deed; and the balance of $20,000.00 to be paid "at the sell [sic] of interest of said purchase property." Subsequently, on July 11, 1989, Mr. Summers furnished a warranty deed which Joseph signed and acknowledged before a notary public. The deed reserved a vendor's lien to secure the payment of the balance of the purchase price.

On March 1, 2001, the chancellor filed an excellent trial opinion containing a narration of the proceedings and pertinent evidence, findings of fact, and conclusions of law, which we quote in part:

> On June 2, 1989, Anita Joyce Owen, Joseph B. Owen, Jr. and Eola Summers borrowed the sum of $52,319.50 from the Somerville Bank and Trust, executed a Deed of Trust, mortgaging the farm to secure that loan, and the Deed of Trust was recorded in the Office of the Register of Fayette County, Tennessee, on June 8, 1989. Joseph B. Owen, Jr. executed the Deed of Trust to Somerville Bank and Trust while he was in the Fayette County Jail, in the presence of a Notary Public, and from the proceeds of the loan, Mr. Owen received checks in the amount of $1,250.00 and $4,750.00, on June 6, 1989.
>
> The present case involves a suit filed on February 6, 1997, by the plaintiffs to set aside a warranty deed, with a vendor's lien, dated July 11, 1989, on the basis of fraud, misrepresentation and incompetency.
>
> The plaintiffs contend, at the time of the execution of the deed by Joseph B. Owen, Jr. that he was mentally incompetent because of drug use, and that his first cousin, the defendant, George D. Summers, defrauded him by obtaining his signature on the warranty deed. The plaintiffs further say that although the deed contained a vendor's lien, that it allowed the defendant to purchase Joseph B. Owen, Jr.'s one-third interest in his grandparents' farm for $5,000.00, when it had a market value of at least $50,000.00.

---

[1] We note that the companion case of *Canepari v. Summers*, No. W2000-00527-COA-R3-CV, 2000 WL 33191368 (Tenn. Ct. App. 2000), was before this Court previously. In that case, this Court affirmed the trial court's order that the property be sold for partition. That case did not resolve the issue of ownership of the one-third interest in the property at issue here.

Mr. Summers contends that the action is barred by the statutes of limitations found in T.C.A. § 28-2-101 and § 28-2-102, because the plaintiffs did not bring this action within seven years after July 11, 1989, the date Mr. Owen signed the deed.

The plaintiffs assert that the fraud committed by the defendant was a continuing one. The warranty deed with the Vendor's Lien, states that Mr. Summers will pay Mr. Owen an additional $20,000.00 when and if Mr. Summers sells the land.

The plaintiffs contend that the warranty deed with vendor's lien, by its terms, is an executory or continuing contract, and that the defendant's fraud is a continuing one. The plaintiffs aver that since the warranty deed with the vendor's lien is fraudulent and provides for continuing performance on the part of Mr. Summers at an undetermined date in the future, the fraud and misrepresentation continued, and that the applicable statute of limitations could not run until the contract was performed. The plaintiffs also assert that any statute of limitations was tolled because Mr. Owen was incompetent at the time of the execution of the deed and for a considerable period thereafter.

Mr. Summers contends that he had no reason to believe that Mr. Owen was not competent, that it was Mr. Owen who contacted him to sell his undivided interest, and that Mr. Summers at all times believed Mr. Owen to be competent to handle his legal affairs. Mr. Summers also asserts the affirmative defenses of accord and satisfaction, estoppel, fraud, laches, and release and/or waiver. Mr. Summers further says that his tender of $20,000.00 by payment into Court of that sum on the 24th day of July, 1998, after this action was filed, extinguished his obligation to Mr. Owen under the vendor's lien.

The parties, after a jury could not reach a verdict, by stipulation and consent, submitted this matter for a non-jury decision by the Court on the basis of the record and the evidence heard by the jury. This Court did preside over the jury trial and heard and observed the witnesses and the other evidence presented in this case.

The parties have submitted their proposed findings of fact and conclusions of law, which along with the opinion of the Court of Appeals, have been utilized by this Court, as permitted by Delvan-Delta Corporation v. Larry W. Roberts, 611 S.W.2d 51 (Tenn. 1981),

but the conclusions and findings made and contained in this Trial Opinion are entirely those of this Court.

Anita Joyce Owen, Joseph B. Owen, Jr. and Eola Owen Summers were the only heirs of Virginia H. Owen and Burke Owen, both now deceased. Upon the death of Virginia H. Owen, on April 20, 1989, they each became the owners of an undivided one-third interest in the lands of Burke and Virginia H. Owen, including the 461 acre farm which is the subject of this litigation.

In June 1989, two third-parties, Ronnie Smith and Michael Sciara, through agent, Lou Ronza, made an offer to purchase the 461 acre farm and four acre tract for $225,000.00 by presenting a real estate contract signed by them. Anita Joyce Owen delivered the Lou Ronza contract to Eola Summers.

Eola Summers rejected the Lou Ronza contract and refused to sell the farm for $225,000.00 because she felt "that was not enough and it was too hurried a deal." Ms. Summers stated that anything under $50,000.00 would have been inadequate for her one-third interest in the land. Anita Joyce Owen testified that her sister said that she did not sign the contract because her son, Dempsey, would not let her.

Mr. Summers was aware of the offer of $225,000.00 as of June 30, 1989. Mr. Summers said that the farm was worth between $300.00 and $400.00 per acre in 1989.

The plaintiffs presented expert proof as to the value of the land as of July 12, 1989, by James Thompson, a realtor and appraiser in Somerville and Fayette County since 1967. Mr. Thompson was familiar with the 461 acre Burke-Owen farm, and testified that the farm as a whole had a fair market value of about $700.00 an acre on July 12, 1989, or the sum of $322,000.00, with one-third interest being worth $107,333.00. However, Mr. Thompson stated that because it was an undivided interest, he would discount its value by one-half, or to about $53,600.00.

The Court finds that the value of a one-third undivided interest in and to the 461 acre farm as of July 12, 1989, the date of the recording of the warranty deed in question, was at least $50,000.00.

The proof in this case shows that Joseph B. Owen, Jr., at the time of the trial, had been incarcerated in the Northwest Correctional Facility in Tiptonville, Tennessee, since 1996, for drug-related driving offenses.

Mr. Owen began using marijuana and alcohol when he was in junior high, and by the time he was seventeen years old, he had become a heavy cocaine user, including crack cocaine.

The preponderance of credible proof shows that, from the time that his grandmother died on April 20, 1989, until well after the execution of the land-sale contract and warranty deed in July of 1989, Joseph B. Owen, Jr. was in a constant drug-induced state of m ind. Mr. Owen had been treated multiple times over the years at Harbor House, Serenity, JACOA, Aspil Manor, Memphis Mental Health Institute, Jackson-Madison County Hospital, Parkwood in Olive Branch, Mississippi, the Memphis House, now called Memphis Recovery Center, and he was admitted to the Med in Memphis for five days because of a drug overdose.

The evidence is clear that Mr. Owen was in a continuing drug addicted condition from approximately 1985 until his incarceration in 1996.

Mr. Owen's drug-induced state of mind and condition during the period in question was further corroborated by Sheriff Bill Kelly of Fayette County. In 1989, Mr. Owen, according to Sheriff Kelly, was heavily abusing drugs and alcohol, and most of the time was in a drug-induced stupor or fog. Sheriff Kelly testified that he was required to deal with Mr. Owen on a regular basis from the time that he turned eighteen. Mr. Owen was arrested in Fayette County on January 14, 1989, May 3, 1989, and again on April 24, 1990.

Mr. Owen testified that, after the death of his grandmother in 1989, his illegal drug habit increased dramatically. He went from being out of control to being "ballistic" and "crazy." He said: "I just didn't care." During the period from his grandmother's death on April 29th through at least July 30th of 1989, Mr. Owen stated there was never a day that he was not using some form of drugs, including cocaine, crack cocaine, whiskey, marijuana and pills.

In mid-June 1989, about two weeks before the transaction with Mr. Summers, Dorothy Jean Owen picked up her son at St.

Francis Hospital in Memphis. He was in a stupor and very incoherent, and it took two days for him to sleep it off.

In the latter part of June 1989, Dorothy Jean Owen responded to a call and found her son in a parking lot at Baptist Hospital bent over in pain, wearing no shoes or shirt, and with his jaw broken in two places. He was incoherent and did not know what had happened to him. This resulted in Mr. Owen having his mouth wired shut and being placed on pain medications. Dorothy Jean Owen allowed Mr. Owen to remain in her home through July 1989. She checked on him periodically through the day and observed him regularly from the latter part of June through July 1989.

Dr. Giaroli performed out patient surgery on Mr. Owen on June 28, 1989, to repair his fractured jaw. In connection with his admission for out patient surgery, Mr. Owen executed a written consent and authorization for treatment by Dr. Giaroli.

Mr. Owen was prescribed Demerol, Visteril and two other kinds of tranquilizers as a result of his broken jaw, and was using those prescribed drugs in addition to his constant illegal drug use. As already indicated, Mr. Owen said there was never a period from June 30th through July 12, 1989, that he was not using intravenous drugs, taking Demerol and several tranquilizers and drinking whiskey.

The Court finds, by a preponderance of the credible proof, that at the time the deed in question was signed on July 11, 1989, Mr. Owen was in a drug-induced state of mind, and lacked the capacity to enter into a contract, did not comprehend what he was doing, and could not have voluntarily entered into a binding transaction.

The Court finds that Mr. Summers chose a time to negotiate his "contract" with Mr. Owen, who he had only seen two or three times in his lifetime, when Anita Joyce Owen, the mother[2] [sic] of Mr. Owen, was hospitalized in Charter Lakeside Hospital. The Court finds that these circumstances, along with the other statements and action of Mr. Summers, lead to the conclusion that Mr. Summers chose the dates of his transaction with Mr. Owen in order to avoid the presence of those who were protective of Mr. Owen and to keep them from being advised of what was happening.

---

[2] Ms. Owen is the aunt of Mr. Owen, and this was corrected in the supplemental trial opinion.

The defendant, Mr. Summers, obtained a contract from an office supply store and took it to the house of the mother of Mr. Owen where he wrote up an agreement in his own handwriting, which he persuaded Mr. Owen to sign. The contract provided, in part:

> Seller agrees to sell and convey unto the purchaser, with a clear and perfect title thereto by a good and sufficient deed with the usual covenants therein, title by dissent properly released . . . for the sum of Twenty Five Thousand Dollars ($25,000.00) to be paid as follows: $5,000.00 down payment at recording and balance to be paid at $20,000.00 at the sale of interest of said purchased property.

Mr. Summers stated that Mr. Owen asked for money to buy more Visteril and Demerol for his broken jaw, and that he drove Mr. Owen to the Clover Leaf Pharmacy where he handed him a $125.00 check at the same time that the sales contract form was being notarized in the pharmacy. The following day, he gave Mr. Owen another $50.00, and he drove Mr. Owen to the grocery store to cash the $50.00 check.

After obtaining the signed sales contact from Mr. Owen, Mr. Summers procured the services of the attorney, James (Jay) Watson, who drafted the warranty deed. The deed, after conveying Mr. Owen's undivided interest to Mr. Summers, provides, in part:

> The grantee does hereby expressly convey unto grantor a vendor's lien to secure payment of the balance of the purchase price. The total consideration for this transaction is Twenty-Five Thousand & No/100 ($25,000.00) Dollars. Of this amount Five Thousand & No/100 ($5,000.00) Dollars has been delivered to and accepted by grantor upon execution of this instrument. The remaining balance of Twenty Thousand and No/100 ($20,000.00) Dollars shall become fully due and payable without interest upon any future sale of grantee's interest required hereunder.

The attorney, James (Jay) Watson, testified that he used the language in the deed from the handwritten contract form. According

to Mr. Watson, Mr. Summers told him that Mr. Owen had an attorney, David Henry, who was going to review the deed.

Joseph B. Owen, Jr., never met with Mr. Watson. Mr. Watson testified that he would have considered it inappropriate to have Mr. Owen execute a deed if he had been made aware that he was on drugs, or if his eyes, speech, or demeanor indicated that he was impaired in some way. The deed was not executed in the attorney's office, but it was notarized at Bub's Used Car Lot on Summer Avenue in Memphis.

The Court find, under the language contained in the deed, that unless Mr. Summers decided to sell his interest, Mr. Owen would never be paid the $20,000.00. The purported vendor's lien is not a demand note. It is not payable on demand. It is payable only when and if the defendant sells the property. Thus, if Mr. Summers never sells, the event never occurs, and any statute of limitations does not begin to run until the happening of the event that triggers the obligation.

Mr. Watson testified that upon any future sale of the property, or any interest therein, including any refinancing of the property, sale of mineral rights, or any subdivision thereof, Mr. Summers would be obligated to pay Mr. Owen. Mr. Summers admitted that when he sold part of the land to the State for a right of way, he did not pay Mr. Owen any portion of the proceeds.

The total payments made by Mr. Summers to or for Mr. Owen at or near the time of his purchase of Mr. Owen's interest in the land were as follows:

| | |
|---|---|
| Initial Cash | $ 10.00 |
| Earnest Money | 125.00 |
| Additional Check | 50.00 |
| Cashier's Check | 4,683.40 |
| ½ Recording Fees | 66.80 |
| ½ Attorney Fees | 65.62 |
| | |
| Total | $5,000.82 |

\*          \*          \*

-8-

After considering all of the evidence and the equities in the cause, including the credibility of the witnesses and the other proof, the Court finds:

1. That the Warranty Deed, with Vendor's Lien, executed by Joseph B. Owen, Jr. to George D. Summers on July 11, 1989, and filed of record in the Register's Office of Fayette County, Tennessee, was obtained by fraud and misrepresentation and should be set aside, rescinded, and declared null and void.

2. That the fraud of defendant, George Dempsey Summers, was a continuing one and that the defense of the running of the statutes of limitation is not applicable.

3. That from June 1989, until at least the middle of 1994, the plaintiff, Joseph B. Owen, Jr. was incompetent due to his addiction and abuse of drugs, and that on June 10, 11 and 12, 1989, Mr. Owen did not possess sufficient capacity to enter into contracts and deeds. Therefore, the warranty deed executed on July 11, 1989, is null and void, and any statutes of limitations were tolled until at least the middle of 1994, and the complaint filed February 11, 1997, by the plaintiff, was not time barred.

4. Since the rental proceeds from the land in question were applied to the accrued interest and to reduce the principal owed on the mortgage, Joseph B. Owen, Jr. is entitled to receive the benefit of these payments on the mortgage as an award of damages for the loss of the rental value.

5. The defendant, George D. Summers, is entitled to a set-off and reimbursement of the cash paid to Joseph B. Owen, Jr. at or about the time of the execution of the deed ($10.00 + $125.00 + $50.00 + $4,683.40) in the total sum of $4,858.40, and also the pro-rata real estate taxes paid on the one-third undivided interest by George D. Summers. The Court does not award the payment or reimbursement of attorney fees or other expenses of either party. The Court also does not award any pre-judgment interest to either party.

6. The Court Costs shall be paid by the defendant, George D. Summers.

The chancellor entered "Final Order and Decree" which provides:

This cause having come on to be heard before the Honorable Dewey C. Whitenton, Chancellor, sitting without a jury by consent of the parties, upon the complaint, answer, exhibits, stipulations, admissions, recorded testimony of witnesses, and evidence that had been presented at a jury trial conducted February 16-18, 1999 that resulted in a mistrial, the Chancellor, having presided over such trial and having heard the evidence, the witnesses' testimony and having observed with witnesses' demeanor and having assessed their credibility, and having heard arguments of counsel, after the submission of proposed findings of fact and conclusions of law by the parties on November 27, 2000, did render his findings and verdict in this matter as set forth in his Trial Opinion dated February 28, 2001, as supplemented on March 6, 2001, in which he made specific findings of fact and conclusions of law, and the same being incorporated herein by reference,

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the Warranty Deed with Vendor's Lien, executed by Joseph B. Owen, Jr. to George D. Summers on July 11, 1989, and filed of record in the Register's Office of Fayette County, Tennessee, having been obtained by fraud and misrepresentation, is hereby ordered set aside, rescinded, and declared null and void.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that since the fraud of Defendant, George Dempsey Summers, was a continuing one, the asserted defense of Defendant Summers of the running of statutes of limitation is not applicable.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court having found that because the plaintiff, Joseph B. Owen, Jr. was incompetent due to his addiction and abuse of drugs, from June 1989 until at least the middle of 1994 and that on July 10, 11 and 12, 1989, Joseph B. Owen, Jr. did not possess sufficient capacity to enter into contracts and/or deed, the warranty deed executed on July 11, 1989, is declared null and void, and any statutes of limitations were tolled until at least the middle of 1994, and the complaint filed on February 11, 1997, by the plaintiff, was not time barred.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, since the rental proceeds from the land in question were applied to the accrued interest and to reduce the principal owed on the mortgage, Joseph B. Owen, Jr. is entitled to receive the benefit of these

payments on the mortgage as an award of damages for the loss of the rental value.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, George D. Summers, is entitled to a set-off and reimbursement of cash paid by him to Joseph B. Owen, Jr. at or about the time of the execution of the deed ($10.00 + $125.00 + $50.00 + $4,683.40) in the total sum of $4,858.40, and also the pro-rata of any real estate taxes on the one-third undivided interest paid by George D. Summers.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there shall be no award or payment of reimbursement of attorney fees or other expenses to either party.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that no pre-judgment interest shall be awarded to either party.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court costs shall be paid by the Defendant, George D. Summers.

ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED this 12th day of March, 2001.

Mr. Summers appeals and presents seven issues for review in his brief. In his first issue, he asserts error by the court in denying his motion for summary judgment based on the seven year statute of limitations. This issue as framed will not be considered by this Court. Where a trial court's denial of summary judgment was predicated upon existence of a genuine issue of fact, that decision is not reviewable on appeal where there has been a judgment rendered after a trial on the merits of the case. *See Hobson v. First State Bank* 777 S.W.2d 24 (Tenn. Ct. App. 1989); *Mullens v. Precision Rubber Products*, 671 S.W.2d 496 (Tenn. Ct. App. 1984).

In his second issue, Mr. Summers asserts the court erred in denying his motion for directed verdict. Since a directed verdict is applicable only to jury cases, we assume he is complaining of error in the former jury trial. The record does not reflect any post-trial motion in the jury phase, but the parties stipulated that because of the hung jury, the case was submitted to the chancellor for a nonjury trial. Therefore, Mr. Summers waived his right to assert error in the jury trial.

We have, therefore, rephrased the issues as follows: (1) Whether the trial court properly found that, for statute of limitations purposes, plaintiff was incompetent; (2) Whether the trial court properly found that plaintiff was not competent to execute the contract and deed to the Property; (3) Whether the trial court properly found that defendant Summers obtained the deed by fraud and misrepresentation; (4) Whether the trial court properly ordered the deed "set aside, rescinded, and

declared null and void"; and (5) Whether the trial court properly awarded plaintiff damages for loss of the rental value of the property.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). For the reasons below, we affirm the trial court's judgment.

We first address the threshold issue of whether the trial court properly found that plaintiff's cause of action was not barred by Tennessee's seven (7) year statute of limitations set out in T.C.A. § 28-2-102.[3] In this case, the trial court found that T.C.A. § 28-2-102 did not apply because, "from June 1989, until at least the middle of 1994, the plaintiff, Joseph B. Owen, Jr. was incompetent due to his addiction and abuse of drugs." The trial court also found that "the fraud of defendant, George Dempsey Summers, was continuing and that the defense of the running of statutes of limitation is not applicable." Because we hold that the trial court properly found Mr. Owen's incompetency tolled the seven-year statute of limitations, we need not address the trial court's alternative finding of continuing fraud to toll the statute of limitations.

Although T.C.A. § 28-2-102 does act to bar real property actions not brought within seven years, T.C.A. § 28-1-106 acts to toll the statute of limitations where the person entitled to commence the action was of unsound mind at the time the right of action accrued. That statute provides:

> If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

T.C.A. § 28-1-106 (2000). Statutes of limitation are meant to protect defendants from prejudice because of undue delay and to guard against loss of evidence over the passage of time. *See Smith v. Grumman-Olsen Corp.*, 913 F.Supp. 1077, 1083 (E.D. Tenn. 1995). For this reason, "exceptions to a limitations statute in favor of persons under disability should be strictly construed and never extended beyond their plain import." *Id.*

---

[3]That section provides:

> Any person, and those claiming under such person neglecting for the term of seven (7) years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, under recorded assurance of title, as in § 28-2-101, are forever barred.

T.C.A. § 28-2-102 (2000).

The plaintiff has the burden of proving he or she was of unsound mind at the time the cause of action accrued. *See, e.g., Smith v. Grumman-Olsen Corp.*, 913 F. Supp. 1077, 1084 (E. D. Tenn. 1995). The plaintiff's disability must have existed at the time the cause of action accrued and, once the disability has been removed, the cause of action must be brought within three (3) years. *See* T.C.A. §. 28-1-106. T.C.A. § 28-1-106 does not define "unsound mind." Additionally, we have found no Tennessee cases addressing whether drug addiction could render an individual of "unsound mind" in the context of statutes of limitation.

This Court has recognized that use of narcotics and barbiturates can impair an individual's ability to execute a will. *See Bruster v. Etheridge*, 345 S.W.2d 692, 698 (Tenn. Ct. App. 1960). In *Bruster*, this Court observed:

> In Phillips' Pritchard on Wills and Estates, Vol. 1, sec. 114, it is said;
>
> > 'Drunkenness is of itself a species of insanity, self-imposed; and long continued habits of intemperance may, in some temperaments, gradually destroy the mind and impair the memory and other faculties, so as to produce permanent derangement. But the mere fact that the testator was under the influence of intoxicating drinks will not, of itself, render the testamentary act invalid. To have that effect, it must appear that the habit of indulging in strong drink has produced some fixed mental disease, or that his present state of intoxication is such as to render him not master of himself and, therefore, irresponsible for his acts.'
>
> In support of the above statement the text cites, *Key v. Holloway*, 66 Tenn. 575, *Peck v. Cary*, 27 N.Y. 9, 84 Am.Dec. 220. 1 Page on Wills, 150, and the annotation in 67 A.L.R. 857.

*Id.*

In *Doe v. Coffee County Bd. of Educ.,* 852 S.W.2d 899 (Tenn. Ct. App. 1992), the Court dealt with the statute of limitations defense in a student sexual abuse case. The students-plaintiffs asserted, among other things, that they were entitled to the tolling provisions of T.C.A. § 28-1-106 to extend the statute of limitations by virtue of post-traumatic syndrome as a result of the abuse. The Court, in analyzing this assertion, said:

> Tenn.Code Ann. § 28-1-106 postpones the running of the statute of limitations for persons who are "of unsound mind" when

their cause of action accrues. While the statute itself does not define the term "unsound mind," an early case construing the statute's predecessor applied it to an elderly woman found to be "incapable of attending to any business, or of taking care of herself." ***Porter v. Porter***, 22 Tenn. (3 Hum.) 586, 589 (1842).

> The ***Porter v. Porter*** formulation is generally consistent with the common understanding of "unsound mind," ***Sheats v. Tri-Cities' Hosp. Auth.,*** 167 Ga.Appl. 122, 306 S.E.2d 75, 76 (1983); 56 C.J.S. ***Mental Health*** § 2, at 500 (1992); 54 C.J.S. ***Limitations of Actions*** § 117 (1987); 44 C.J.S. ***Insane Persons*** § 2, at 46 (1945), and is consistent with the decisions of other jurisdictions applying similar statutes to cases involving child sexual abuse. ***Smith v. Smith***, 830 F.2d 11, 12 (2d Cir. 1987); ***John R. v. Oakland Unified Sch. Dist.,*** 206 Cal. App.3d 1473, 240 Cal.Rptr. 319, 323 (1987); ***Burpee v. Burpee***, 52 Misc.2d 466, 578 N.Y.S.2d 359, 361-62 (S.Ct. 1991).

***Id.*** at 905. Since the ***Porter v. Porter, supra,*** formulation is generally consistent with a common understanding of "an unsound mind," it is appropriately used in the context of T.C.A. § 28-1-106.

In the case at bar, we do not find that the evidence preponderates against the trial court's finding that Mr. Owen was incompetent by virtue of his drug and alcohol abuse. Both Mr. Owen and his mother, Dorothy Owen, testified that Mr. Owen had abused drugs and alcohol from an early age, and that Mr. Owen's drug habit escalated from marijuana to intravenous drugs such as cocaine. Mr. Owen was admitted to multiple drug treatment centers over the period of time in question, and was admitted to the hospital for a drug overdose at least once.

Additionally, Fayette County Sheriff Bill Kelley testified at trial that Mr. Owen heavily abused alcohol and drugs and was arrested at least three times in 1989 and 1990. The record also indicates that Mr. Owen's jaw was fractured at the time the deed was executed, and that Mr. Owen was taking Demerol, Vistaril, and tranquilizers in addition to cocaine, whiskey, marijuana and "pills" after his jaw was wired shut. Mr. Owen testified that, at the time he signed the deed in 1989, his drug habit had "increased . . . anywhere from a minimum of $300 to $800 to $1,000 a day."

The trial court stated, "The evidence is clear that Mr. Owen was in a continuing drug addicted condition from approximately 1985 until his incarceration in 1996." When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). Under these circumstances, we agree with the trial court that

-14-

Mr. Owen was incapable of taking care of himself and of his affairs during the seven-year period following the execution of the disputed deed. For these reasons, we affirm the trial court's finding that Mr. Owen's cause of action was not barred by the applicable statute of limitations.

We next address the issue of whether Mr. Owens was incompetent to execute the deed in question. As we noted above, we believe the trial court properly found Mr. Owens was incompetent for purposes of tolling the applicable seven-year statute of limitations. However, as defendant/appellant Summers correctly points out, less mental capacity is required to execute a deed or will than to execute a contract. *See Roberts v. Roberts*, 827 S.W.2d 788, 791 (Tenn. Ct. App. 1991). The question then becomes what mental capacity is required to execute a deed, and whether Mr. Owen had sufficient capacity to execute the deed to Mr. Summers.

In *Seat v. McWhirter*, 29 S.W. 220, 227 (Tenn. 1894), the Tennessee Supreme Court said, "The law does not require that persons shall be able to dispose of their property 'with judgment and discretion' in order to the validity of a conveyance. It is sufficient if they understand what they are about." *Id.* (quoting *Paine v. Roberts* 82 N.C. 453 (1880)). Similarly, this Court, in *Roberts*, noted that contractual capacity must be judged in light of the facts and circumstances surrounding each case. *Id.* at 792.

In this case, the trial court specifically found that Mr. Owen was using illegal drugs, as well as painkillers and tranquilizers prescribed for his broken jaw, at the time he signed the deed in dispute. In his Opinion, the Chancellor noted that "at the time the deed in question was signed on July 11, 1989, Mr. Owen was in a drug-induced state of mind, and lacked the capacity to enter into a contract, did not comprehend what he was doing, and could not have voluntarily entered into a binding transaction." The evidence in the record does not preponderate against the Chancellor's finding. We, therefore, affirm the trial court's determination that the deed should be declared null and void.

The Chancellor also found that the deed was procured by fraud and misrepresentation allowing recission of the deed. We note that "[t]he right of the Court to order rescission is discretionary" and that "the Court should exercise this discretion very sparingly and only award it 'in cases where some such element as actual fraud, accident, mistake or insolvency . . . appear to justify it.'" *Early v. Street*, 241 S.W.2d 531, 536 (Tenn. 1951) (quoting *McMillan v. American Suburban Corp.*, 188 S.W. 615, 617 (Tenn. 1916)). We believe the trial court correctly found that the circumstances of this case warranted rescinding or voiding the deed.

The trial court specifically noted that Mr. Summers chose a time to negotiate the transfer of the Property during the time Mr. Owen's aunt, Anita Joyce Owen, was herself hospitalized for drug addition and, therefore, unable to protect her nephew's interests. The record indicates that Mr. Owen asked Mr. Summers for money to buy more Visteril and Demerol, and that Mr. Summers drove Mr. Owen to the pharmacy to purchase the medications. Mr. Summers then gave Mr. Owen a $125.00 check at the same time that Mr. Summers was having someone at the pharmacy notarize the contract for sale of the property. The record also indicates that, rather than having the deed to the property

notarized in the attorney's office, Mr. Summers had it notarized at Bub's Used Car Lot on Summer Avenue, in Memphis. Considering these circumstances with Mr. Owen's mental and physical condition, we hold that the trial court did not abuse its discretion in voiding the deed in question.

Finally, we address the issue of damages. The trial court ordered Mr. Owen to refund the $4,858.40 that Mr. Summers gave him in consideration for the deed. The court also found that Mr. Owen was entitled to receive the benefit of payments Mr. Summers made on the mortgage which were paid for by rental proceeds from the Property. Neither party received prejudgment interest, and court costs were to be paid by Mr. Summers, with both parties covering their own attorneys fees and expenses. We believe such an outcome is proper, given the fact that the deed from Mr. Owen to Mr. Summers was void for lack of capacity.

We, therefore, affirm the Order of the trial court setting the deed aside. Pursuant to that Order, and to ensure that the parties to the deed are returned to the status quo, the deed should be rescinded upon payment by Mr. Owen of the $4,858.40 he received from Mr. Summers. This case is remanded to the trial court for such further proceedings consistent with this opinion. Costs of this appeal are assessed to the defendant/appellant and his sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.